In re Application of Chicago, Burlington & Quincy Railroad Company to discontinue agency at the station of Ellsworth, Nebraska, and to substitute a custodian therefor. Chicago, Burlington & Quincy Railroad Company, a corporation, appellant, v. Order of Railroad Telegraphers, appellee.

52 N. W. 2d 238

Filed February 29, 1952. No. 33098.

*J. W. Weingarten* and *Walter P. Loomis,* for appellant.

*Harry E. Gantz, Donald E. Williams, C. O. Griffith,* and *William H. Hein,* for appellee.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

The Chicago, Burlington & Quincy Railroad Company, hereinafter called the carrier, filed an application with the Nebraska State Railway Commission, hereinafter called the commission, requesting authority to discontinue station agency and substitute custodial service therefor except during the cattle shipping months of September and October, at Ellsworth, Nebraska. No

written objections were filed, but interested persons did appear with counsel at the hearing and orally protested. The application was denied, and upon the overruling of its motion for rehearing the carrier appealed to this court, assigning substantially that the order of denial was arbitrary, unreasonable, and contrary to law. We sustain the assignment.

Applicable rules of law are well established in this jurisdiction. They will not be repeated in this opinion. It is sufficient for us to say that they will be found in Thomson v. Nebraska State Railway Commission, 143 Neb. 52, 8 N. W. 2d 552; In re Application of Union P. R. R. Co., 149 Neb. 575, 31 N. W. 2d 552; and In re Application of Chicago, B. & Q. R. R. Co., 152 Neb. 367, 41 N. W. 2d 165.

Such rules have been predicated by this court upon the proposition that although the state has broad powers of regulation, it does not enjoy the freedom of an owner of the carrier, and that unless public necessity requires it, the discretion of the carrier in establishing and maintaining its stations should not be interfered with by the commission.

In the final analysis, when an application is made for additional service or to discontinue an existing service, the question to be determined is the public need or lack of need therefor. In deciding such question the cost of providing the service and revenue derived therefrom are important elements although not controlling. It is contemplated, of course, that the carrier shall provide adequate and comprehensive service to the public in the territory which it serves. In that connection such duties and responsibilities of a carrier are taken into consideration by rate-making bodies in the fixing of rates and charges which limit the revenue, dependent upon public use of the particular services the extent of which use measures the public need.

In the case at bar, a large part of the record, briefs of counsel, and arguments as well have been devoted to

the question of whether or not the carrier's theory of allocation of revenue and cost of operation at the station involved was correct. We do not consider that question of prime importance except insofar as sums involved may measure the public need by indicating the extent of use or lack of use of the services there made available by the carrier. In other words, the carrier is not required to maintain standby station agency service not comprehensively used by the public, or to be used only when other established carriers fail to meet the need.

The pertinent facts are not disputed. Ellsworth is an unincorporated village with a population of about 10 people. Its business district is composed of one general store and carrier's depot, with adjacent stockyards, side track, and industry track. The village is in the Alliance division, on the carrier's Kansas City-Billings line. It is located in the sandhills cattle country, 7.51 miles east of Lakeside and 19 miles west of Ashby, both of which are maintained as open-agency stations. The aforesaid mileage is practically the same by rail as by black-top highway No. 2 which parallels the railroad from Ravenna to Alliance, and goes through both Ellsworth and Lakeside. The people of Ellsworth have access over such public highway by truck, passenger, and other motor vehicles to the state's entire highway system.

No grain is shipped from Ellsworth. The only carloads forwarded therefrom are cattle, most of which are shipped in September and October of each year. A few carloads of feed, coal, and miscellaneous freight and less than carload lot shipments are received during the year, and a considerable portion of that is received freight prepaid. Truck lines also serve the community. For the last three years approximately 90 percent of the total revenue received at the station was from carload shipments. All of the freight shipments in 1950 averaged 17 a month. In 1949 they averaged 21 a month.

In 1948 they averaged 23 a month. There was a small amount of passenger, express, and Western Union business in addition. In that connection, in 1948 and 1950 there were 4 months of each year and in 1949 there were 5 months when no passengers whatever traveled from Ellsworth. It was clearly established that outside of September and October, months during which cattle were generally shipped, the agent had very little work to do, and that the average of all of it would take less than one hour's work during a day. The fact is that there was comparatively little business done at the station during the other 10 months of the year and the cost of maintaining the agency substantially exceeded the revenue for the whole year.

The train service consists of a west-bound passenger train No. 41, due in Ellsworth at 4:09 a. m., at which time there is no one on duty at the station. East-bound passenger train No. 44 is due at 11:42 a. m. Two other passenger trains, one in each direction, Nos. 42 and 43, do not stop at Ellsworth. There is also a west-bound afternoon local freight train on Tuesdays, Thursdays, and Saturdays, with no regular time schedule.

No change in such train service would result from the proposal contained in the application here involved. A centralized traffic control system with which trains are operated by signal devices and without train orders has been installed through Ellsworth, so that no train orders are used or handled by the agent and there is no need for a telegrapher to operate trains.

Nevertheless, until the present time the carrier has maintained an agent at Ellsworth, who is also a telegrapher working five days a week. In addition there is a custodian, the general store owner's son, who works Saturdays, Sundays, and holidays from 11 a. m. to 1 p. m.

The carrier proposed in the application to continue that same service during September and October, but during the rest of the year it was proposed to have a

custodian only who could live in the depot if desired. He will be on duty from 10 a. m. to 12 noon, and from 4 p. m. to 5 p. m. five days a week, and also from 10 a. m. to 12 noon on Saturdays, Sundays, and holidays. He will keep the depot clean, warm, and open from 10 a. m. to 5 p. m. Further, he will receive, care for, and deliver shipments to consignees. Lakeside will be the accounting station but shipments may be billed from Ashby. Of necessity Ellsworth will be a prepaid station except where the shipper has established credit with the carrier, which the merchant at Ellsworth has already done. The custodian will also receive and forward car orders to the accounting station, give instructions for shipping and moving cars or freight, and secure information for patrons about services and trains. He will also handle the express business. Passengers will pay their fares to the conductor without any surcharge and baggage will be checked on the train.

There will be a telephone in the depot waiting room, available to any person who can thereby call the agent at Lakeside or Ashby, send telegrams, give shipping instructions, and obtain any carrier information desired without telephone toll charges. Long distance telephone service is also available at the general store. For cattle shipments the storekeeper at Ellsworth is and has been the health and brand inspector.

The fact is that the carrier proposes to establish a substitute service for 10 months of the year which will afford the same essential service as theretofore, but of course it will be less convenient in some respects. While public convenience is an element to be considered, it is not controlling in the absence of a showing of public necessity, as in the case at bar.

We therefore conclude that the order of the commission denying the application of the carrier was arbitrary, unreasonable, and contrary to law.

Therefore, such order should be and the same hereby

is reversed and the cause is remanded with directions to grant such authority.

REVERSED AND REMANDED WITH· DIRECTIONS.