IN RE APPLICATION OF CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY.
CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, APPELLANT, v. FARMERS UNION CREAMERY ET AL., APPELLEES.

87 N. W. 2d 616

Filed January 31, 1958. No. 34324.

*Milton V. Thompson, Thomas I. Megan,* and *Chambers, Holland, Dudgeon & Hastings,* for appellant.

*Crosby, Pansing & Guenzel, Edwin T. McHugh, Arthur J. Denney,* and *George P. Burger,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

The Chicago, Rock Island and Pacific Railroad Company commenced this proceeding before the Nebraska State Railway Commission to secure permission to discontinue passenger trains Nos. 25 and 26 operating between Omaha and the Nebraska-Kansas state line near Thompson, Nebraska. Protests were filed by the Farmers Union Creamery and Randall's Florists of Fairbury in behalf of themselves and all others similarly situated and in behalf of the public generally. A second protest was filed by George Vogel of South Bend, William Roker of Clatonia, and Nancy Snavely, Ruth Taylor, and Mrs. Earl Keller of Alvo. The commission after a public hearing, denied the application and the railroad company has appealed.

There are 20 communities served by these trains be-

tween Omaha and the Nebraska-Kansas state line. Four of them, Omaha, Lincoln, Havelock, and Fairbury, are adequately served by other trains and competing lines. The use of private automobiles and trucks has reduced passenger traffic on these trains to a very low average. Common-carrier buses and trucks have taken their toll from the passenger and head-end services. For 1952, 1953, 1954, and 1955 the average number of passengers per train mile was 2.4, 2.7, 2.4, and 2.9, respectively. The average passenger revenue per day for these 4 years was $14.52, $15.74, $13.92, and $16.73. The average daily wage expense for the train crew for these 4 years was $133.71, $136.98, $149.97, and $143.10. The losses sustained by the company for the same 4 years are shown to be $21,277, $20,934.30, $38,452.23, and $37,746.94.

The main source of income from these two trains is the carrying of mail. The applicant is not a common carrier of mail and any alleged inconvenience with respect to the handling of mail is not relevant to the issues. In re Application of Chicago, B. & Q. R. R. Co., 152 Neb. 352, 41 N. W. 2d 157. The evidence shows that the railroad proposes to originate or extend truck service to handle business now handled as head-end service on these trains. It therefore appears that the handling of milk, cream, and express in the event of the discontinuance of these trains is adequately provided for.

There is evidence of certain individuals in the record to the effect that they would be discommoded by the discontinuance of the operation of these trains. While the evidence is proper to be considered in determining the issues, it is not necessarily controlling. It is the necessity of the public as distinguished from individuals that must receive the first consideration by this court. In re Application of Chicago, B. & Q. R. R. Co., 138 Neb. 767, 295 N. W. 389.

It is contended that, as the company shows an overall profit during the years immediately prior to the filing of the application to discontinue trains Nos. 25

and 26, they should not be discontinued. It must be conceded that the fact that these trains are operated at a loss is not the controlling factor. As a common carrier the company has the obligation of performing service necessary to meet the needs of the public. On the other hand, a common carrier is required to operate its business efficiently and economically. It is not required to operate trains at a loss where public convenience and necessity do not require it. The public convenience and necessity is the controlling factor, and where it does not exist it is the duty of the commission to eliminate economic loss by permitting the abandonment of the service resulting in such loss. The evidence in this case clearly shows that the service remaining after the discontinuance of these trains, and the service afforded by other common carriers in the territory, are adequate to meet the public need. Under such circumstances the denial of permission to discontinue passenger train service operated at a loss is unreasonable and arbitrary. In re Application of Chicago, B. & Q. R. R. Co., 138 Neb. 767, 295 N. W. 389; In re Application of Chicago, B. & Q. R. R. Co., 152 Neb. 352, 41 N. W. 2d 157; In re Application of Chicago, B. & Q. R. R. Co., 152 Neb. 367, 41 N. W. 2d 165; Chicago, B. & Q. R. R. Co. v. Order of Railroad Telegraphers, 155 Neb. 387, 52 N. W. 2d 238; Chicago & N. W. Ry. Co. v. City of Norfolk, 157 Neb. 594, 60 N. W. 2d 662. On the authority of these decisions we hold the order of the commission, denying the application of the company, to be without evidentiary support and therefore unreasonable and arbitrary.

The order of the commission is vacated and the issues raised by the application are remanded to the commission for further consideration in accordance with the holdings of this opinion.

REVERSED AND REMANDED.