TURNER, Justice.
This is an appeal by the Louisiana Public Service Commission from a judgment of the district court annulling and setting aside its Order Number 7912 and authorizing the Illinois Central Railroad Company to discontinue and close immediately Tickfaw, Louisiana, as an agency station.
In its application to the Commission, Illinois Central Railroad Company alleged that the operation of its agency station at Tickfaw had resulted in a constantly increasing loss, a decreasing volume of business and that the public convenience and necessity no longer require the continuance and maintenance of the agency station.
The railroad further alleged that Tickfaw is located on a hard-surfaced, all-weather public highway (U. S. No. 51) and is midway between Independence, 4.1 miles to the north, and Hammond, 6.3 miles to the south, both agency stations of the railroad with adequate telephone facilities to and from Tickfaw and its immediate community and vicinity; that both of these stations will be continued and maintained as agency stations in such close proximity and so accessible to Tickfaw that any and all business originating or consigned to Tickfaw and its vicinity can and will be conveniently and ade *774 quately handled and transacted at either Independence or Hammond without any undue or unnecessary delay, inconvenience or hardship to any receiver or shipper of freight to be transported by the railroad.
At the hearing before the Commission, counsel for protestants moved that the application was premature since, less than two years before, the Commission’s denial of a previous application to close Tickfaw had been upheld by the district court. No appeal was taken by the railroad from that judgment. The Commission referred the motion to the merits.
The railroad introduced a statement showing that in the year 1957 this station was operated at a loss of $2,884.47 and in the year 1958 the loss increased to $3,036.-96. In computing these losses, the railroad credited to the Tickfaw station one-half of the amount of the freight business and 100% of all other business done by the station to arrive at the yearly income. The railroad further charged against this station not only the actual station expenses but also its pro rata of the general operating expenses of the railroad. Witnesses for the railroad testified that the gross revenues assignable to Tickfaw for the year 1957 amounted to $13,012.07 and expenses $15,896.54 ($5,083.51 direct station expenses and $10,813.03 pro rata of systemwide expenses) for a loss of $2,884.47. In 1958 the gross revenues assignable to Tickfaw amounted to $12,636.75, and expenses $15,-673.71 ($5,397.50 direct station expenses and $10,276.21 pro rata of systemwide expenses) for a loss of $3,036.96.
In their testimony, protestants urged that the main patronage of Tickfaw came from local farmers and shippers of strawberries and vegetables; that having the agent there was necessary to them, both for the signing of bills of lading and the ordering of cars; that the proportion of the strawberry crop moving via rail (as compared to the moving by truck), was increasing; that the services of an agent were frequently needed in connection with icing and reicing of the produce cars, and that many of these shippers were unable to make out a bill of lading to be signed by the conductor without the assistance of an agent.
The Commission found that the testimony indicated that during the year 1958 the total revenues at the Tickfaw station were $17,475.54 while the direct station expenses for the same period were $5,397.50. Not only did the Commission credit all the business done at Tickfaw, both inbound and outbound, to that station but did not allocate any of the systemwide expense to this station. On its basis of computing the net revenue the Commission concluded that the financial results of the station’s operation for 1958 did not indicate that such operation constituted a drain upon the carrier’s revenues and that in view of the obvious need of the agency by the shippers in the locality the public convenience and neces *776 sity require the continued operation of the Tickfaw station.
Upon petition by the railroad, the district court set aside and annulled the order of the Commission on two grounds, first, that the method of accounting and allocating expenses utilized by the railroad in arriving at its loss figures for the periods involved must be accepted by the court since protestants failed to offer any evidence to show that the railroad formula is incorrect or that there is better method of accounting; and, second, that the evidence showed that the discontinuance of this station will not seriously affect the public convenience and necessity
On this appeal, the Commission contends that the trial court erred (1) in accepting the railroad’s method of accounting and allocating expenses; and (2) in its holding that the discontinuance of the station will not seriously affect the public convenience and necessity.
With respect to the first contention this Court has held that in the absence of any evidence to the contrary we must adopt the formula of the railroad in accounting and allocating expenses as the correct one. Missouri Pacific R. Co. v. Louisiana Public Service Comm., 238 La. 243, 115 So.2d 337. A study of the record in this case unmistakably shows that the Commission has failed to produce evidence to refute the railroad’s method. Furthermore, the Commission has accepted and applied this formula in other station closing cases.
The remaining question to be decided is whether the discontinuance of the station will seriously affect the public convenience and necessity.
Appellants strenuously argue that it was premature for the railroad to file a second petition for the discontinuance of this station only fifteen months after the denial of its first petition was affirmed by the district court. In the absence of any showing in the record that the rules of the Commission prohibited the second petition at that time, we cannot entertain the proposition. Actually the period of time between the two applications was nearer to four years. That is of no importance since the rules of the Commission permit the filing of an application every six months.
Witnesses for the railroad testified that should the Tickfaw agency station be closed, less than carload shipments will be placed in the warehouse at Tickfaw and the owner or consignee will be notified of its arrival and the location of the key to the warehouse so that he may remove his shipment. Outbound less than carload shipments will be presented to the local freight train conductor who will sign the bill of lading and take it to the next agency for waybilling.
*778 Inbound carload shipments will be set out and placed for unloading at Tickfaw and the waybill taken to Hammond or Independence as preferred and notice sent on arrival of the car from either of those points. On outbound carload shipments there will be free telephone service to Hammond or Independence to arrange for cars. The shipment will still be loaded at Tickfaw should the shipper desire, the bill of lading to be signed by the freight conductor. If the shipper prefers, he can make arrangements by free telephone to ship from either Hammond or Independence.
Although the protestants argued that it is necessary to have an agent at Tickfaw as the local farmers and shippers are unable to prepare the necessary bills of lading, it was admitted by their witnesses that all the strawberry growers are represented by two associations that handle the strawberries and other produce on consignment. These shipments are delivered by each producer to the respective association warehouse and are then loaded on cars by the association with one bill of lading for each car being issued by the express agent who handles those shipments during the rather short berry season, estimated at six weeks out of the year. One of the witnesses for the railroad stated that there are always several express agents in and out of Tickfaw as they are needed during the berry season and, in the event the station is closed, an agent of the railroad will be sent to Tickfaw if he is needed during the berry season. Aside from the strawberry season there is practically no other railroad business at Tickfaw.
Tickfaw is a five-day-a-week station. Hammond gives service around-the-clock, seven days a week. The record does not indicate the hours during which service is available at Independence.
Although protestants urge that Tickfaw is progressing rather than declining, the only testimony which they offered to support their contention was that the community had been incorporated since the first application for closure of its agency station by the railroad and the Tickfaw post office was not closed during the discontinuance of many of the small community post offices recently. On the other hand, the railroad showed that it had handled approximately 5,000 cars of strawberries a year in 1930 and that this volume had dropped to an average of 1,200 cars later and for the combined season of 1958-1959 to less than 300 cars, all of these figures from the entire Hammond - Independence - Tickfaw-Pontchatoula area.
The rule in regard to discontinuance of an agency station is a determination of the public convenience and necessity in relation to such service and the expense of the operation as compared with the revenue *780 therefrom. The circumstances which should be considered are the volume of business done at the station, its proximity to other stations, the accessibility thereof, the cost of maintaining such agency station, the financial loss, if any, to the railroad company, due regard for the welfare of the public, and the probabilities of future development. Missouri Pacific R. Co. v. Louisiana Public Service Comm., 238 La. 243, 115 So.2d 337; Texas & New Orleans R. Co. v. Louisiana Public Service Comm., 235 La. 973, 106 So.2d 438; and Texas & New Orleans R. Co. v. Louisiana Public Service Comm., 233 La. 787, 98 So.2d 189.
Railroads have played a very important part in the building of our vast nation and in its economic development into the present industrial leadership of the world. There was a time when the railroad had a monopoly in the transportation of freight and passengers. However, in the present motor age the railroads are in tough competition with buses and truck lines, as well as private passenger cars, transporting freight and passengers over a vast system of improved highways built and maintained by public funds, as well as pipeline carriers. They are also in competition with governmental subsidized waterways and airlines. It is therefore the duty of regulatory bodies and the courts who, in a sense, have control over the railroads to view the entire picture and with long range consideration. We assume that a business as large as the railroad corporation is operated by competent men experienced in that field. When we throttle and stifle their operations to the extent that we force them to maintain economic losses through the operation of certain stations, we must look for the necessity and inconvenience occasioned the people using the station and weigh this against the losses in service and efficiency to the majority, which logically results from this drain on revenues. To force the railroad to continue losing operations which, from the evidence, show a steady decline over a period of years will inevitably result in bankruptcy for the railroad company and assumption of management by the Federal Government or in decreased and less efficient service, maintenance and equipment.
Counsel for opponents in this case takes the position that the removal of an agent from the Tickfaw station will have the effect of entirely eliminating service to the Tickfaw residents which, of course, is not the situation as we have previously pointed out, and the slight inconvenience, if any, occasioned thereby must yield to the common good.
In the present case the record clearly reveals that the railroad is experiencing an increasing loss in the operation of the Tickfaw agency station. This loss com *782 bined with the showing that the public convenience and necessity will not be materially adversely affected justifies the immediate closure of the station.
For the reasons assigned, the judgment of the district court is affirmed.