130 So.2d 398

**TEXAS AND NEW ORLEANS RAILROAD COMPANY**

v.

**LOUISIANA PUBLIC SERVICE COMMISSION et al.**

No. 45550.

May 29, 1961.

Jack P. F. Gremillion, Atty. Gen., Joseph H. Kavanaugh, Special Counsel, Baton Rouge, for defendant-appellant.

Chaffe, McCall, Phillips, Burke & Hopkins, William E. Crawford, New Orleans, for plaintiff-appellee.

HAMLIN, Justice.

Plaintiff, Texas and New Orleans Railroad Company (hereinafter referred to as the Railroad), appealed to the Nineteenth Judicial District Court in and for the Parish of East Baton Rouge from Order No. 8302, dated December 30, 1960, of the Louisiana Public Service Commission (hereinafter referred to as the Commission), which denied the Railroad's application to discontinue its agency station at Iowa, Louisiana.[1] Article VI, Section 5, Louisiana Constitution of 1921, LSA. Finding that the continuance of the agency station was not required by the public convenience and necessity, the district court reversed, annulled, and set aside the Commission's order and authorized plaintiff to discontinue its agency station at Iowa, Louisiana. The Commission appeals from this judgment.

1. Louisiana Public Service Commission Docket No. 8304, "Texas and New Orleans Railroad Company Ex Parte. In re: Discontinuance of Agency Station at Iowa, Louisiana."

The Order of the Commission recites in part:

"Evidence presented by the applicant indicates that the gross business done at Iowa proper during the year ended with March 1960 was $66,076.55. Of this figure they allege that $15,162.00 accrued to the Texas & New Orleans, the remainder being paid in divisions to other lines on joint-line traffic.

"Of this $15,162.00, however, only $12,017.97 is actually credited to the station. This latter figure was arrived at by adding to the Texas & New Orleans' proportion of joint line traffic one-half of the station's receipts on local or single line traffic.

"It appears that during the period under discussion, namely April 1959 to March 1960, inclusive, the agent at Iowa took care of business done at the nearby non-agency station of Chloe. This business amounted in gross to $18,214.26 of which $13,886.67 accrued to the Texas & New Orleans, * * *

"We cannot adopt the railroad's theory that work done by the Iowa agent should not be credited to the Iowa station since it is, of course, the Iowa agent who is proposed to be removed. Even if we yield to the railroad's contention that the Iowa station is entitled to credit for only one-half of its local business, logic forces us to conclude that the net total of the Texas & New Orleans at Iowa would be $12,-017.97 plus the $13,886.67 netted at Chloe or a total of $25,904.64. That sum remains after the railroad has done its utmost, by every possible accounting device, to minimize the apparent earnings at Iowa. The alleged cost of handling freight into and out of the Iowa station is $7,557.95 and the cost of handling freight at Chloe is stated to be $9,737.32. Both of these latter figures are based on a system ratio for 1959. The actual cost of operating the station at Iowa is stated to be $6,123.65. Thus by adding every possible expense that can be charged against both Chloe and Iowa we find an alleged cost of $23,418.92 as compared with a grossly understated revenue of $25,904.64. If any faith is still to be placed in plain arithmetic in these station cases, it is obvious that the agency at Iowa is earning a profit. The record shows that the public convenience and necessity require the services of the agent, and we conclude that the agency should be continued in the public interest. * * *"

The trial court found that Iowa is situated about midway between Lake Charles and Welsh—twelve miles east of Lake Charles and eleven and one-half miles west of Welsh—with a national highway connecting the three points. Iowa is served by two major motor freight carriers, one of

them being an affiliate of plaintiff; freight service required beyond that furnished by motor carriers can be secured by means of collect telephone calls to Lake Charles or Welsh. The court further found that the major portion of the business at the non-agency station at Chloe had been transferred to Lake Charles. It stated that the Railroad's net revenue or loss on freight to and from Iowa reflected a loss of $2,673.40, and the net revenue or loss on freight from the non-agency station of Chloe reflected a profit of $4,149.35; the net profit from the two stations being only $1,475.95. These facts, coupled with our holding in Texas & New Orleans Railroad Company v. Louisiana Public Service Commission et al., 235 La. 973, 106 So.2d 438, 442,[2] were decisive of the trial court's conclusion that there was no showing that the continuance of the agency station at Iowa was required by the public convenience and necessity.

In this Court the Commission asserts that the trial court erred, (1) in holding that the evidence did not support the Commission's finding that the agency at Iowa should not be discontinued because of the public inconvenience which would result from such action; (2) in holding that public convenience and necessity did not require the continued operation of the Iowa agency; and, (3) in determining respondent's loss by excluding from consideration the amount of revenue accumulated at the Chloe non-agency station which was handled by and through the Iowa Station.

▮ A review of the evidence adduced at the Commission's hearing of plaintiff's application discloses that the facts, supra, found by the trial judge are correct.

The proceedings also reveal that Mayor Vivian Vest of Iowa considered the maintenance of agency service at Iowa a public convenience and necessity; he stated, however, that he did not ship or receive any freight by carloads. J. I. Watson, operator of the Iowa Rice Dryer, testified that he was the largest user of the railroad, and that it would be a convenience to him to keep the station there because of the rice shipped out and the supplies shipped in, fertilizer and so on; he stated, however, that he thought he would be able to order the cars he needed and make his arrangements by telephone. Mr. Watson said he could operate his business in a satisfactory manner if the station were removed. Frank Foreman, Postmaster at Iowa, who neither shipped nor received carloads of freight, testified that he thought the removal of the

2. "The record as a whole reflects that there is no necessity for an agency station at Longstreet and the small profit does not justify the expense incurred by the railroad. Further it is manifestly shown that the traffic can be adequately taken care of at Keatchie or Logansport with only the inconvenience of a long distance telephone call, paid for by the railroad. The record shows that the amount of traffic at the Longstreet station does not justify its continuance."

station would be a disservice to the community. A. J. Foreman, a school teacher and Councilman of the Town of Iowa, stated that he considered the maintenance of agency service at Iowa by the Railroad a public convenience and necessity. Martin Delaney, Councilman from Iowa and owner of a grocery store, testified that he was of the opinion that the Railroad could not render service of the same character if the station were removed.

Raymond Leonard testified on behalf of the Railroad that the service to be rendered Iowa if the station were removed would be efficacious and of a type satisfactory to the customers. E. P. Evans, a superintendent of the Railroad with headquarters at Lafayette, Louisiana, testified that if the agency station were removed the Railroad would be able to improve its plant operation; he stated that the principal object of the application was to conserve expenses. Mr. Evans further testified that the Chloe non-agency business was transferred to the Lake Charles Agency.

A review of the financial statements submitted to the Commission by the Railroad shows that the Railroad suffered a small financial loss in its operations at Iowa. There is no evidence of record disclosing that Iowa anticipates an industrial boom, nor is there any evidence showing a near future need for increased railroad service of the type now rendered.

■ Applicable to this cause, as well as to all causes of a similar nature, is the predicate that, "orders of the Public Service Commission, like those of other administrative bodies acting under a delegation of discretionary authority, should be accorded great weight and will not be overturned by the courts in the absence of a clear showing of abuse of power." Illinois Central R. Co. v. Louisiana Public Service Commission, 224 La. 279, 69 So.2d 43, 47; Texas & New Orleans Railroad Company v. Louisiana Public Service Commission, 233 La. 787, 98 So.2d 189; Texas & New Orleans Railroad Company v. Louisiana Public Service Commission, 235 La. 973, 106 So.2d 438; Rubion Transfer & Storage Co., Inc. v. Louisiana Public Service Commission, 240 La. 440, 123 So.2d 880; S. A. Harris Transfer & Storage, Inc. v. Louisiana Public Service Commission, 240 La. 1059, 127 So.2d 148.

■ In determining whether there was an abuse of power by the Commission, we stated, in Illinois Central R. Co. v. Louisiana Public Service Commission, 240 La. 769, 125 So.2d 159, 161, that "this Court has held that in the absence of any evidence to the contrary we must adopt the formula of the railroad in accounting and allocating expenses as the correct one." In the same case, we held:

"The rule in regard to discontinuance of an agency station is a deter-

mination of the public convenience and necessity in relation to such service and the expense of the operation as compared with the revenue therefrom. The circumstances which should be considered are the volume of business done at the station, its proximity to other stations, the accessibility thereof, the cost of maintaining such agency station, the financial loss, if any, to the railroad company, due regard for the welfare of the public, and the probabilities of future development. * * *" See, also, Louisiana & Arkansas Ry. Co. v. Louisiana Public Service Commission, 240 La. 658, 124 So.2d 899.

In Herrin Transportation Company v. Louisiana Public Service Commission, La., 127 So.2d 541, 544, we stated that "Although this Court has established that orders of the Commission should be given great weight, it has not been hesitant in reviewing the evidence to determine whether it was substantial enough to support the orders of the Commission."

Applying the above jurisprudence to the instant matter, we find an absence of evidence contradicting the formula of the Railroad in accounting and allocating expenses; we also find from the evidence that the public convenience and necessity of the Community of Iowa does not demand that the Railroad agency be maintained. Yazoo & M. V. R. Co. v. Louisiana Public Serv-

ice Commission, 170 La. 441, 128 So. 39; LSA–R.S. 45:1165. The revenue of the station (even taking into consideration that of Chloe) compared with its expenses is small. The proximity of Iowa to other agency stations is close; the accessibility is not obstructed. The probabilities of future development is not imminent.

We conclude that the evidence of record does not support the conclusion of the Commission.

For the reasons assigned, the judgment of the trial court is affirmed.