135 So.2d 268

**TEXAS & NEW ORLEANS RAILROAD COMPANY**

v.

**LOUISIANA PUBLIC SERVICE COMMISSION et al.**

No. 45679.

Dec. 11, 1961.

Jack P. F. Gremillion, Atty. Gen., Joseph H. Kavanaugh, Special Counsel, Baton Rouge, for defendants-appellants.

Chaffe, McCall, Phillips, Burke & Hopkins, William E. Crawford, New Orleans, for plaintiff-appellee.

SUMMERS, Justice

This is an appeal by the Louisiana Public Service Commission from a judgment of the district court annulling an order of the commission, which denied the application of Texas & New Orleans Railroad to seasonally operate its Duson, Louisiana, agency station.

The Texas & New Orleans Railroad Company made application to the commission for authority to discontinue its agency station as Duson, Louisiana, except during the cotton shipping season, usually the months of September and October. The commis-

sion denied the authorization applied for. The railroad appealed to the district court which annulled the order of the commission and authorized the closing of the station, under the condition that the station be reopened during the four months of August, September, October and November of each year. From this judgment of the district court the commission appealed to this court seeking the reinstatement of its order denying authority to close the station at any time. The railroad answered the appeal asking that its original application for closing except during the cotton shipping season, usually September and October, be approved and that the judgment of the district court be amended accordingly.

The questions for decision are: Does the public convenience and necessity require the maintenance of the agency station during twelve months of each year? If not, does the public convenience and necessity require its maintenance during August, September, October and November, or would September and October be sufficient?

Duson is an incorporated town located on the main line of the Texas & New Orleans Railroad, 5.1 miles from the Town of Rayne and 10.3 miles from the City of Lafayette. U. S. Highway 90, a main concrete highway, parallels the rail line and connects Duson to Lafayette and Rayne, both of which latter municipalities maintain agency stations for the railroad. Duson is connected to much of the surrounding area by hard-surface and all-weather highways and roads.

Duson receives motor carrier service from three motor carriers, including the railroad's Southern Pacific Transport truck lines. The testimony of the Superintendent of the railroad is that there has been a general decrease in business at the Duson station for several years and that "about the only months" when the railroad operates above costs at Duson is during the cotton season. Elimination of the agency station, except during the cotton season, would not result in a discontinuance of service. Traffic would be handled from the Lafayette or Rayne station by telephone calls collect from the patron to the stations. The calls to Rayne being local, no charge would be involved. Accounting would be handled at Rayne. Information concerning shipments could be obtained from the dispatcher at Lafayette.

Representatives of the railroad would be sent from Lafayette or Rayne to handle and adjust claims for damaged freight.

Shipments of carload lots from Duson would be handled by the patron signing the bill of lading and leaving it in the waybill box for pickup and signing by the train's conductor, the shipper's copy to be left in the waybill box for his pickup at his convenience, or by calling Rayne or Lafayette those stations could "bill out" the shipment.

Spotting of the cars would be handled by phone calls from either Rayne or Lafay-

ette, at the expense of the railroad. There is to be no change in the existing physical facilities at Duson—the track and building would remain for use in connection with the handling of shipments. During the cotton shipping season an agent would be on hand at the Duson station to handle and transact the business. Other stations of the railroad, operating without agents, handling much more traffic, have rendered adequate service without complaint.

The only inconvenience resulting to the people of Duson would be that occasioned by using the telephone to transact their business in lieu of being able to transact that business in person with an agent at the Duson station. Too, the inconvenience involved in an automobile trip to Rayne, 5.1 miles to the west via a main concrete highway, is nothing more than the distance required to be traveled by patrons in many urban areas who use rail facilities when they wish to handle their business with the agent in person.

The inconvenience to the public resulting from this proposed change, therefore, is slight. It requires us to consider if the inconvenience thus to be experienced is properly offset by the savings to be effected to the railroad by the proposed change.

During the test period involved (the calendar year 1959) no carload shipments were made from Duson during eight months. Eighty-four per cent of the carload ship-ments occurred during the months of September and October. The total cost to the railroad for maintenance of the agency station during the test period was $5,133.48. A saving of $4,278.84 annually would be effected by closing the station except for the two months of the cotton season, usually September and October. A proportionate reduction in savings would result by maintaining the station the additional two months required by the judgment of the district court. True, without the closing requested, based upon the test period, the station at Duson would nevertheless realize an annual profit of $1,062.16.

■ The sole basis for the request is the saving to be effected by the railroad, but such a basis is a valid one which merits consideration. This enterprise is entitled to non-interference from the commission in the wise and economical use of its funds, provided that use does not unduly inconvenience the public.

The accounting method adopted by the railroad here has not been attacked, nor has an alternative accounting been offered by the protesting parties. Furthermore, the protestants have provided no evidence which would support a conclusion contrary to that reached here. The facts brought by them into the record are meager indeed.

Seasonal closing of railroad stations has been recognized by courts of other jurisdictions when justified by the circumstances.

Atlantic Coast Line R. Co. v. King, Fla., 51 So.2d 723; Application of Chicago, B. & Q. R. Co., 155 Neb. 387, 52 N.W.2d 238; Missouri-Kansas-Texas Railroad Co. of Texas v. Fowler, Tex.Civ.App., 290 S.W. 2d 922; Los Angeles & Salt Lake R. Co. v. Public Service Comm., 121 Utah 209, 240 P.2d 493, rehearing denied per curiam 121 Utah 217, 253 P.2d 355.

■ As heretofore stated by this Court "* * * orders of the Public Service Commission, like those of other administrative agencies acting under a delegation of discretionary authority, should be accorded great weight and will not be overturned by the courts in the absence of a clear showing of abuse of power." Texas & New Orleans R. Co. v. Louisiana Public Service Commission, 241 La. 635, 130 So.2d 398, 402, and cases therein cited.

■ The general rule prevailing in such cases as that here presented is that the "* * * test employed in determining whether or not a railroad may properly be entitled to discontinue an agency station, where an absolutely necessary service is not involved, is whether the public good derived from maintenance of the agency station outweighs the expense to the railroad in continuing such agency. In determining such matters consideration should be given to the volume of business done at the station, its proximity to other stations, the

accessibility thereof, the cost of maintaining such agency station, the financial loss, if any, to the railroad, giving due regard to the welfare of the public and the probabilities of future development." Texas & Pacific Railway Company v. Louisiana Public Service Commission, 240 La. 669, 124 So.2d 902, 904. Also, Missouri Pacific Railroad Company v. Louisiana Public Service Commission et al., 238 La. 243, 115 So.2d 337; Texas & New Orleans Railroad Co. v. Louisiana Public Service Commission, 235 La. 973, 106 So.2d 438; Texas & New Orleans Railroad Co. v. Louisiana Public Service Commission, 235 La. 973, 106 So.2d 438; 74 C.J.S. Railroads § 402c(2).

■ Testing the facts and circumstances here involved by the applicable law above enunciated, we find no error in the judgment of the district court in annulling the order of the commission and in requiring the maintenance of the agency station during the four months of August, September, October and November. For, as stated by the district judge, "It is noted that 13 carloads of cotton were shipped in August, 61 in September, 26 in October and 3 in November, and none in the other months. The spread of the season may be uncertain and may vary. The shippers are entitled to know definitely when the agent is to be on duty."

For the reasons assigned the judgment of the district court is affirmed.