222 So.2d 499

**SOUTHERN PACIFIC COMPANY**

**v.**

**LOUISIANA PUBLIC SERVICE COMMISSION et al.**

**No. 49519.**

May 5, 1969.

Joseph H. Kavanaugh, Baton Rouge, for defendants-appellants.

Chaffe, McCall, Phillips, Burke, Toler & Sarpy, Harry McCall, Jr., New Orleans, for plaintiff-appellee.

HAMLIN, Justice.

The Louisiana Public Service Commission (hereinafter referred to as the Commission) appeals suspensively to this Court from a judgment of the district court which annulled and set aside Order No. 9928 of the Commission and directed the Commis-

sion to issue its order to Southern Pacific Company (hereinafter referred to as Southern Pacific) authorizing the closing of its agency station at Carencro, Louisiana.[1]

Southern Pacific filed an application with the Commission on June 28, 1966, in which it alleged, "Petitioner accordingly desires to discontinue its agency at Carencro. If this is done, there will be no difference in handling of less than carload freight and no change in physical handling of carload shipments, except shippers order notify and collect, which can and would be satisfactorily handled by the agency at Lafayette, at which point petitioner will accept long distance telephone calls made from Carencro on business that may originate there." Southern Pacific further alleged that the station was being operated at a loss, and that the volume of business being handled did not justify its continued operation at Carencro.

On October 26, 1967, the Commission issued Order No. 9928 (one Commissioner dissented) which denied Southern Pacific's application. The Order stated, "The matter was finally considered at a Business and Executive Session of the Commission on October 20, 1967, and, upon the record, it is the Commission's opinion that the

public convenience and necessity require the maintenance of the agency station at Carencro, La. * * *" Rehearing was refused on November 29, 1967.

The present petition, praying for reversal of the Commission's Order No. 9928 and the granting of plaintiff's application to discontinue operation of its agency at Carencro, Louisiana, was filed in the district court on December 29, 1967. LSA–R.S. 45:1192; Art. VI, Sec. 5, La.Const. of 1921.

We have read the testimony offered to the Commission and submitted to the district court, and we find that in his reasons for judgment the district judge correctly summarized it as follows:

"* * * A noticeable feature of a study of the record is the high esteem and regard the business men and patrons of the railroad hold for the lady agent at Carencro—she has, indeed, sold the railroad's business to the public and she undoubtedly is a good liason agent for the railroad. * * * Mr. Phil Boudreaux of Houston, Texas, Special Representative of plaintiff railroad for 25 years, testified that the railroad operated this station at a financial loss and that as disclosed by plaintiff's documen-

1. In the district court it was stipulated by counsel that the evidence to be considered by the court in the decision of the matter would be that offered upon the hearing before the Commission; it was further stipulated that the cause would be submitted to the court upon the record below and briefs filed by plaintiff and defendant.

The matter was submitted in this Court. Southern Pacific filed a brief herein; no brief was filed by the Commission.

tary offering A-1, to close the station would save the railroad $7,500.00 annually. * * *

"Mr. Robert Doucet, Division Agent for plaintiff, testified that the Lafayette office remains open 24 hours—7 days a week and that this office could render as good or better service to the patrons at Carencro by telephone, collect, than the agent at Carencro could possibly render. * * *

"Mr. Elroy J. LeBlanc, District Sales Manager for plaintiff, testified that the Southern Pacific Transport Company is a contractual agent (a trucking line) for the railroad to handle their LTL and truck load freight. Mr. LeBlanc testified on Page 37 of the transcript as follows:

"'I think we are in a position to give you a very good LTL service, truckload service, for both transport and rail and to perform any of the necessary side services that go with the pick up and delivery of the freight. I see no reason why the discontinuance of an agency for the railroad at Carencro would have any effect whatsoever upon your receipt or forwarding of LTL or truckload freight.'

"Mr. Lester Tisdale testified for opponents to closing the station. Mr. Tisdale lives in Carencro and represents the Triple A Brick Company in Lafayette. Mr. Tisdale testified he does not

believe Lafayette can and will give the service that Carencro gives. * * *

"Mr. Charles Kidder lives at Carencro, is manager and president of Lafayette Co-op. Mr. Kidder testified that he likes the Southern Pacific and gets good service from them and hates to see the station go. He testified that their business is growing and that that three years ago they did $270,000.00 worth of business while in 1966 they did $435,000.00 and in 1967 and 1968 $480,000.00. He testified all their feed comes to Carencro by rail and that the shippers' relations with the railroad company are excellent. * * *

"There were several other residents of Carencro who testified as to their opposition on general grounds to closing the station. The Mayor of the town testified against the closing and there was introduced into evidence a resolution by the Police Jury of this Parish and the Town Council of Carencro opposing the closing of the station.

"It was testified by plaintiff's witnesses and introduced in documentary offerings A-1 and A-2 that from April, 1965 through March, 1966 the net revenue realized from the operation of the station was $1,391.94 and that from June, 1966 to May, 1967 the net loss from the operation of the station was $3,421.81. Plaintiff's witnesses testified that Carencro was served by the Southern Pacific Transport Company as well as several

other truck lines and that in the event this agency station is closed, that the patrons at Carencro would be served by the Lafayette office 7 miles south of Carencro; they testified that the Lafayette office had excellent equipment and a large number of personnel to wait on the public and that the patrons at Carencro had the privilege of calling the Lafayette office over the phone free or collect and that in the opinion of these witnesses the operation of the Lafayette office would render even better and more efficient service than was being rendered by the Carencro office due to the excellent equipment and large number of personnel of the Lafayette office."

The district court found that to maintain the Carencro station under the pleasant relationships that existed would be convenient to the shippers. It concluded, however, that the situation did not support the maintenance of the station at a financial loss to the railroad when excellent service could be rendered from the Lafayette office. For reasons hereinafter set forth, we find that the judgment of the district court is correct.

■■ "In cases of this kind we start with the premise that the orders of the commission are entitled to great weight, and that the burden is on the railroad to show their invalidity. If, however, the findings and conclusion of the commission are not supported by the evidence and do not conform to the law, its order is unreasonable and should be annulled by the court." Louisiana & Ark. Ry. Co. v. Louisiana Pub. Serv. Comm., 242 La. 67, 134 So.2d 551. In Texas & Pacific Ry. Co. v. Louisiana Pub. Serv. Comm., 240 La. 669, 124 So.2d 902, we stated the rule to be employed as follows: " * * * and according to the rule generally prevailing the test employed in determining whether or not a railroad may properly be entitled to discontinue an agency station, where an absolutely necessary service is not involved, is whether the public good derived from maintenance of the agency station outweighs the expense to the railroad in continuing such agency. In determining such matters consideration should be given to the volume of business done at the station, its proximity to other stations, the accessibility thereof, the cost of maintaining such agency station, the financial loss, if any, to the railroad, giving due regard to the welfare of the public and the probabilities of future development." See, Arkansas & La. Mo. Ry. Co. v. Louisiana Pub. Serv. Comm., 251 La. 963, 207 So.2d 760.

■■ The paramount question in a case such as this is whether the discontinuance of the station will seriously affect the public convenience and necessity. Louisiana & Ark. Ry. Co. v. Louisiana Pub. Serv. Comm., supra. The railroad is entitled to

noninterference from the Commission in the wise and economical use of its funds, provided that use does not unduly inconvenience the public. Texas & New Orleans R. R. v. Louisiana Pub. Serv. Comm., 242 La. 191, 135 So.2d 268; Texas & New Orleans R. Co. v. Louisiana Pub. Serv. Comm., 245 La. 748, 161 So.2d 67.

The above evidence reflects that the Lafayette agency station operates twenty-four hours a day, seven days a week. It is accessible to merchants, farmers, shippers, and business-men of the Town of Carencro. (The trial judge stated that the Town of Carencro has a population of from 2,000 to 2,500 and is located on the Southern Pacific line and on Highway No. 167, seven miles north of Lafayette and about fourteen miles south of Opelousas.)

The testimony of the witnesses, supra, opposed to the closing of the Carencro agency station is speculative in part; it projects inconvenience which is not an actuality. The testimony of the opposing witnesses reflects contentment and satisfaction with the present situation; it is opposed to change. Southern Pacific, on the other hand bore its burden of showing that the maintenance of the Carencro station would result in a financial loss and is not conducive to the Company's economy. Cf. Chicago, R. I. & P. R. Co. v. Louisiana Public Serv. Comm., 243 La. 680, 146 So.2d 161.

▮ We have viewed this matter with long-range consideration, assuming that a business as large as Southern Pacific is operated by competent men experienced in the field of transportation. See, Illinois Central R. Co. v. Louisiana Public Serv. Comm., 240 La. 769, 125 So.2d 159. We conclude that the Commission erred in denying the application of Southern Pacific, and that the district court was correct in annulling its Order No. 9928. See, Kansas City Southern Ry. Co. v. Louisiana Public Serv. Comm., 245 La. 769, 161 So.2d 75.

For the reasons assigned, the judgment of the Nineteenth Judicial District Court is affirmed.

FOURNET, C. J., concurs in the result.