SUMMERS, Justice.
This is an appeal by Southern Pacific Transportation Company from a judgment of the Nineteenth Judicial District Court affirming an order of the Public Service Commission which denied Southern Pacific’s application for authority to discontinue its agency station at St. Martinville.
*316 The agency station at St. Martinville handles rail freight shipped and received in carload lots only. St. Martinville is 22 miles by rail and 16 miles by highway from Lafayette. It is twelve highway miles south of Breaux Bridge, and nine highway miles north of New Iberia. It is located on State Highways 31 and 96, and adjacent to Highways 182, 345 and 347. It is an incorporated community in St. Martin Parish, with a population less than 10,000.
The railroad’s application set forth that public convenience and necessity no longer required an agency station at St. Martin-ville, an operating plan having been worked out whereby all shippers and receivers will be satisfactorily served by other agencies.
According to the evidence submitted by Southern Pacific, the application and all applications of a similar nature for the last several years have been predicated on the utilization of a system which is called TOPS — Total Operating Processing System. At an expense of some $22,000,000, Southern Pacific in Texas and Louisiana has initiated an internal computer system that provides instant retrieval of information. This makes it possible to locate any car on the rail system 24 hours a day. It is designed to give communities such as St. Martinville the same access to computer service enjoyed by New Orleans, Baton Rouge, Westlake, Lake Charles and other larger cities. What the agent at St. Mar-tinville does in regard to tracing equipment, ordering equipment, and initiating equipment requests must be done through the TOPS configuration in Lafayette.
If the agency station were discontinued, Southern Pacific proposes to handle the carload traffic to and from St. Martinville in this manner: If a patron needs a car to load, he will call the agent at Lafayette who will then, in turn, place the order with Southern Pacific’s car distributors to furnish the necessary empty cars for loading by the patron. The conductor will sign the bill of lading and deposit it in a way bill box, or telephone billing will be accepted if desired. Seals for the sealing of cars will be furnished by Southern Pacific. Claims of patrons receiving damaged shipments would be handled by the Lafayette agent, while rate and route information will also be furnished by that agent.
Prior to the hearing, the railroad prevailed upon certain users of its services to handle their business through Lafayette “on a trial basis”. Others were told it was necessary that their business be handled through Lafayette. In this fashion Southern Pacific was able to credit many of the inbound and outbound cars of St. Martin-ville to the Lafayette agency. In consequence of this method of treatment, the agency station at St. Martinville showed a technical loss, although traffic-wise it generated an actual profit. At the same time the agent at St. Martinville was available, to perform the service.
When the hearing was called on March 11, 1974 before the Commission in Baton Rouge, Southern Pacific presented its case. Opponents of the proposal disclosed at that time that a hearing had been held by the Police Jury of St. Martin Parish with the interested patrons of the St. Martinville agency station and representatives of Southern Pacific. At that time, it was agreed by some of the patrons that they would use the Lafayette agency under the proposed plan for a “trial period”, after which Southern Pacific would return for another meeting to discuss the acceptability of the plan with the patrons and interested public officials. Instead, Southern Pacific applied for the discontinuance of the agency station. Consequently, the Commission held the hearing open until the next sitting of the Commission to enable the interested parties to contact the rail users and determine their views toward the proposed change.
At the next hearing held on April 8, 1974, a majority of the patrons — customers shipping or receiving in carload lots — ap *317 peared at the hearing and testified. All were opposed to the change. In fact, there is a statement in the record by the Chairman of the Commission that he had never (in a long tenure on the Commission) seen a case where as many businessmen and public officials had expressed such a strong interest in retaining an agency station.
Substantial testimony and admissions are in the record that businesses seeking industrial sites consider rail transportation facilities to be one of the most important factors a locality must provide to be acceptable. Several patrons of Southern Pacific, principally Martin Mills, established that their carload freight shipments and receipts were increasing at an astonishingly fast rate.
Aside from our conclusion from this record that the agency station at St. Mar-tinville has in the past, is presently, and will in the future, make a profit, there is an adequate showing in this record that discontinuance of the agency station will result in inconvenience to the shippers now depending on that station. For instance, spotting of cars by the Lafayette agency has not proven to be satisfactory. In some instances cars were spotted a considerable distance from the customer’s loading facilities, making it necessary to call Lafayette for an engine to move the car with the built in delays involved. The inference is clear that a local agent, present on the scene, could avoid faulty spotting.
A like complaint arises from the settlement of claims for damaged freight. With the local agent present on the scene, the customer can call the agent to view the damage prior to unloading with little delay. To call Lafayette for someone to view the damage before the freight can be unloaded would necessarily involve a delay with the consequent inconvenience involved. Southern Pacific’s contention that no delay would be involved in settlement of these claims is unimpressive.
In some instances, customers were told by the agent at St. Martinville that they had to handle their business through the Lafayette agency. As a result they were not, notified by the Lafayette agent of arrivals of shipments, necessitating day to day calls to ascertain the status of expected freight car arrivals. They were not told, either, that they could call the Lafayette agent collect. This resulted in expense and inconvenience.
Other customers complained that Southern Pacific was not making sufficient cars available for shipments; that more would be used if they were available, and that doing business with an agent on a personal basis was significantly more satisfactory then the impersonal telephone communication proposed.
These cases are to be determined by settled legal principles which we have often expressed. Foremost among.these is the proposition that:
“[Ojrders of the Public Service Commission should be accorded great weight, will not be overturned by the courts in the absence of a clear showing of abuse of power, and that where the order is not arbitrarily or grossly contrary to the evidence and no error of law has been committed, the court will not substitute its judgment for that of the Commission, and argue that the Commission’s . ” Rubion Transfer Co. v. Louisiana Public Service Commission, 240 La. 440, 123 So.2d 880 (1960) and cases cited there.
With the foregoing principle in mind, we employ this test to determine whether a railroad may properly be entitled to discontinue an agency' station, where an absolutely necessary service is not involved:
“ . . . whether the public good derived from maintenance of the agency station outweighs the expense to the railroad in continuing such agency. In de- *318 termming such matters consideration should be given to the volume of business done at the station, its proximity to other stations, the accessibility thereof, the cost of maintaining such agency station, the financial loss, if any, to the railroad, giving due regard to the welfare of the public and the probabilities of future development.” Texas & New Orleans R. R. v. Louisiana Public Service Commission, 242 La. 191, 135 So.2d 268 (1961) and cases cited there.
Judged by these standards we are satisfied that the opponents of Southern Pacific’s application have adequately established that inconvenience will result from the proposed closing of the station which will adversely affect the public interest. Denegre v. Louisiana Public Service Commission, 257 La. 503, 242 So.2d 832 (1971) (Tate, J., concurring).
For the reasons assigned, the judgment appealed from is affirmed.