## HARRISS-IRBY COTTON CO. v. STATE et al.

No. 3227.   Opinion Filed January 9, 1912.

(121 Pac. 642.)

1. **CORPORATIONS—Powers—Public Supervision—Appeal.** The record on appeal from the Corporation Commission consists of the petition or complaint, if there be one, and "notice of the time and place when and where" the action was to be heard, "together with such of the evidence introduced before, or considered by the Commission as may be selected, specified and required to be certified, by any party in interest, as well as such other evidence, so introduced or considered as the Commission may deem proper to certify," and "a written statement of the reasons upon which the action appealed from was based."

2. **SAME.** When the Supreme Court of this state remands a cause to the Corporation Commission, pending on appeal, on the application of a party thereto, and requires the same to be further investigated by the Commission by permitting such party to introduce additional evidence, and after said cause has been remanded on such application, the Commission, within the time prescribed, sets said cause for hearing at which such evidence may be introduced, the said party takes notice as a matter of law of such setting.

(a) If said cause within the prescribed time has been set for hearing, to take such additional evidence, and the party on whose application said cause was remanded neither having made application to the Commission to set the same for any date certain nor having shown diligence, but being guilty of laches, on a second application for such cause to be remanded for the taking of such evidence, this court in exercising a sound discretion may deny the said second application.

3. **SAME.** When a party, through surprise, unavoidable casualty, or other sufficient reason, has been prevented from introducing evidence at a hearing before the Corporation Commission, and seeks to have the cause, whilst pending on appeal in this court, remanded for the purpose of being allowed to introduce said evidence, such party should set up, under proper verification, the evidence he desires to have introduced, heard, and considered, so that this court may determine its relevancy, materiality, and competency as to the matters pending on review before it.

(a)   Where such evidence has not been so set out, this court, in the exercise of a sound discretion, may decline to have the cause remanded for the taking of such evidence.

(Syllabus by the Court.)

*Appeal from State Corporation Commission.*

Proceedings by C. D. Baldwin and others before the Corporation Commission against the Harriss-Irby Cotton Company. From the decision of the Commission, the defendant appeals. Motion to strike out a portion of the record sustained, and motion of appellant to remand for taking of additional testimony denied.

*Burwell, Crockett & Johnson,* for appellant.

*Charles West,* Atty. Gen., and *Charles L. Moore,* Asst. Atty. Gen., for appellees.

PER CURIAM.   On October 28, 1911, the appellant filed with the clerk of this court a petition in error, with transcript attached, from the Corporation Commission, duly certified by J. E. Love, chairman thereof.   The petition in error is as follows:

"The plaintiff in error, Harriss-Irby Cotton Company, complains of the said defendants in error for that upon the 17th day of October, 1910, in a certain cause pending before the Corporation Commission of the State of Oklahoma, No. 1,445, wherein C. D. Baldwin *et al.* were complainants and the Harriss-Irby Cotton Company was defendant, a certain judgment was rendered by said Corporation Commission in favor of said complainant and against the defendant, and order No. 530 was made and entered by said Corporation Commission.   A certified record and transcript of said proceedings is hereto attached, marked 'Exhibit A,' and made a part of this petition, except that a copy of the evidence taken by said Commission is not hereto attached because the Corporation Commission has refused and declined to certify the same, said evidence being taken by the reporter for said Corporation Commission in shorthand and immediately after the taking of same said reporter became ill and has been ill and unable to transcribe same ever since.   And the plaintiff in error avers that there is error in said record and proceedings, in this, to wit: First. That the Corporation Commission erred in overruling the petition of plaintiff in error for a rehearing of said cause.   Second. That complaint No. 1,445 herein, upon which order No.

530 of the Corporation Commission was based, does not state facts sufficient to give the Corporation Commission of the State of Oklahoma jurisdiction to hear said complaint or to make order No. 530. Third. That complaint No. 1,445, upon which order No. 530 of the Corporation Commission is based, does not state facts sufficient to constitute a cause of action or complaint in favor of defendants in error and against plaintiff in error, and is insufficient to sustain order No. 530. Fourth. That order No. 530 of the Corporation Commission is contrary to law. Fifth. That order No. 530 herein was made by two members of the Corporation Commission, Jack Love, chairman, and Geo. A. Henshaw, commissioner; neither one of said commissioners being present at the time of the taking of the evidence upon which said order was made, and neither one of said commissioners having heard any of the testimony offered in said cause, and the commissioner who had heard said evidence being absent at the time said order was made. Sixth. That the findings of fact by the Corporation Commission in said order showed upon their face that said findings were made on telephone communications with various parties over the state unknown to the defendant, when said parties were not under oath, and when defendant was unable to be present or cross-examine. Seventh. That order No. 530 is in violation of the fifth amendment to the Constitution of the United States, which provides that property shall not be taken for private or public use without just compensation. Eighth. That said order No. 530 of the Corporation Commission is in violation of the fourteenth amendment to the Constitution of the United States, which provides that no state shall deprive any person of liberty or property without due process of law or deny to any person in its jurisdiction equal protection of the law. Ninth. That said order No. 530 is unreasonable and unjust. Tenth. That the Corporation Commission of the State of Oklahoma is without jurisdiction or authority to make said order No. 530. Eleventh. That said Corporation Commission erred in making said order before defendant had closed its case, and after it had requested the Corporation Commission to permit it to introduce and offer additional testimony which was material to the issues being tried. Twelfth. That said Corporation Commission erred in refusing to give to the defendant additional time in which to introduce evidence in its behalf after said Corporation Commission was requested to give additional time for the purpose of introducing material testimony for the defendant herein. Thirteenth. Because said Corporation Commission did not comply with section 1246 of the Compiled Laws of the Statutes (*sic*) of Oklahoma of 1909, in the

taking and transcribing of the testimony herein, and the submission of the same to the Corporation Commission before its consideration, and before the order was made herein; because said cause was heard by one of the commissioners of said Corporation Commission at Geary, Okla., and said evidence was not transcribed and submitted to the Corporation Commission before consideration thereof; and because said testimony was not submitted at a time or place fixed by the Commission for the taking of same; and because the commissioner who heard said testimony left the state immediately after the taking of same and before said order was made, and the only information that the Commission had in reference to the testimony was what it was told by the commissioner taking said evidence."

On said date the following notice and agreement was filed in said case, to wit:

"Notice of appeal herein and application for supersedeas is hereby acknowledged, and the service of summons is hereby waived, and it is agreed that the transcript herein is a correct copy of the record. [Signed] Chas. L. Moore, Asst. Attorney General, of Counsel for Appellees."

Application for writ of supersedeas was also at said time filed with the clerk of this court, which is as follows:

"Comes now the plaintiff in error, the Harriss-Irby Cotton Company, and shows to the Supreme Court that this cause is an appeal from an order of the Corporation Commission made and entered on the 17th day of October, 1911, requiring the plaintiff in error, the Harriss-Irby Cotton Company, to gin whatever custom cotton is presented at its gin in the town of Geary, Okla.; and also fixing the rate which the plaintiff in error may charge for the ginning of lint cotton and for bagging and ties; and also fixing the rate per hundred pounds for seed cotton, including a charge for bagging and ties; and providing also that the company can charge either one of the above prices, but that it must charge either one or the other; and providing that it cannot charge 55 cents for lint cotton in one instance and 25 cents for seed cotton in another instance; and providing that said order shall become effective on the 28th day of October, 1911. Plaintiff in error shows to the court: That the Corporation Commission, by the chairman thereof, has duly made and certified the record of the proceedings filed in said Corporation Commission, and has duly certified and transcribed all of the proceedings in said cause, including the orders made by the Corporation Commission, except that the

evidence taken by the Corporation Commission is not certified herein. Said evidence taken upon said complaint was taken by the stenographer of the Corporation Commission, who became ill immediately after the taking of said evidence and has been ill and unable to transcribe his notes ever since, and is at present in the hospital in Oklahoma City and unable to transcribe the same. That said evidence has never been transcribed or filed with the Corporation Commission. That upon the 21st day of October, 1911, the plaintiff in error filed with the Corporation Commission a motion for a new trial, a copy of which is hereto attached and made a part hereof, which motion for a new trial was upon said date overruled by said Corporation Commission. That thereafter and upon said date an application for a supersedeas was filed with the Corporation Commission, which application is filed herewith as a part hereof and marked 'Exhibit B.' That said application was overruled, so far as the same relates to the service, but was allowed as to the rate of charge. That upon the 21st day of October, 1911, a motion was filed by the plaintiff in error with the Corporation Commission requesting that the record in said case be certified to the Supreme Court. A copy of said motion is filed herewith and made a part hereof. Said record is unable to be certified by the Corporation Commission to the Supreme Court at the present time, and said Corporation Commission entered an order that the record will be certified to the Supreme Court as soon as a transcript is completed and filed, and further stating that the delay in filing the transcript is on account of the illness of Reporter Funk. Plaintiff in error shows to the court that the Corporation Commission has denied its application for supersedeas as the same relates to the service specified in said order, and has advised the plaintiff in error that after the 28th day of October, 1911, said order will be final, and that it will be in contempt of the Corporation Commission and liable to a heavy fine in case it violates said order. Plaintiff in error states that the Corporation Commission and the chairman thereof has refused to grant the application of the plaintiff in error for supersedeas of said order and has refused to allow said plaintiff in error to supersede said order as relates to service pending the appeal of this action, all of which appears from the transcript of the record filed herein. Plaintiff in error represents to the court that it desires and has appealed from said order, and it desires to test the validity of the same. It represents that said order is void and it is being threatened with a heavy fine by the Corporation Commission in case said order is not complied with. Wherefore application is made to this court, and prayer is entered

that this court will grant a writ of supersedeas in said cause suspending said order appealed from until this cause can be heard and determined by this court, and that the amount of the bond on which said supersedeas shall be granted shall be fixed."

On October 31, 1911, motion to supply record in said cause was also filed with the clerk of this court, which is in words and figures as follows:

"Comes now the appellant, Harriss-Irby Cotton Company, and respectfully shows to the court: That the evidence upon which order No. 530 was made by the Corporation Commission was taken at Geary, Okla., upon September 30, 1911, by A. P. Watson, one of the commissioners, which evidence was taken down in shorthand. That immediately after said evidence was taken in Geary, Okla., appellant applied to the Corporation Commission through its attorneys for permission to introduce additional testimony in behalf of the appellant, and requested said Corporation Commission to permit appellant to have the shorthand notes read to it. It was further requested by counsel for appellant that the evidence be transcribed by the reporter, and one of the commissioners of the said Corporation Commission consented that said evidence should be transcribed, and the said court reporter was employed and requested to transcribe the evidence in said case, and to notify attorneys for appellant as soon as the evidence was transcribed. That the reporter agreed to transcribe the evidence as requested and to notify counsel for appellant, but immediately became ill and has been confined to his bed ever since. That the counsel for appellant was not present at the taking of the evidence in Geary, Okla., and has been unable to read any of the evidence taken in said case. That appellant was relying upon the fact that the Corporation Commission would permit it to introduce additional material evidence in its behalf as soon as the court reporter could copy off the evidence taken as above stated, and that it was relying upon this fact at the time said order was issued upon October 17, 1911. Appellant represents that said evidence has never been transcribed and filed, and the time has never been set for its submission to the Corporation Commission, as required by law. Appellant further represents that it has material evidence which it desires to introduce in its behalf, which will materially affect the order herein. Appellant therefore prays the honorable Supreme Court that the record herein be certified back to the Corporation Commission for the purpose of having the transcript of the evidence taken in the case attached thereto, and certified to the Supreme Court; and further requests that

the appellant be permitted to introduce additional evidence upon the issues involved in said order by the Corporation Commission."

The following indorsement is made at the bottom of said motion:

"I hereby accept service of above motion. Chas. West, Atty. Gen., by W. C. Reeves, Asst. Atty. Gen. Oct. 31, 1911." ·

Said motion is sworn to by R. T. Harriss on October 30, 1911, before H. B. Willis, notary public.

On October 31, 1911, the order of said Commission on said application was superseded upon appellant's entering into a bond conditioned to pay the said appellees such damage as they may sustain by reason of the granting of said supersedeas. It is further conditioned by said order, however, that the appellant should give notice of a certain day in every week that it would gin for the public, and such gin should be operated on such day of every week for the patronizing public until the cotton of the patronizing public was ginned. At the same time it was further ordered that the cause should be remanded to the Commission for the receiving of additional testimony which was desired to be offered by the appellant; the same to be heard and certified back to this court within twenty days, together with the evidence taken at the former hearing.

The order entered by the Commission from which the appeal is taken is as follows:

"Opinion and Order. The complainants in this case consist of 25 farmers and business men at Geary and vicinity. The defendant is the Harriss-Irby Cotton Company; the owner and manager, Mr. Harriss, resides in Oklahoma City. The complaint alleges in substance that the defendant operates the only cotton gin at the town of Geary and has a monopoly on the business; that the complainants are compelled to have their cotton ginned at the defendant's gin; that the defendant is charging an unreasonable price for ginning of cotton; that it charges 25 cents per hundred pounds for ginning seed cotton and $1.25 for furnishing bagging and ties, making a total cost of approximately $6 per bale. Complainants pray that the Commission issue an order requiring the defendant to gin cotton for the public at a reasonable price therefor. The evidence in this case shows that the people in and

around Geary have been paying 25 cents per hundred pounds for ginning cotton, and $1.25 per bale for bagging and ties. After the filing of this complaint the defendant charged 30 cents per hundred pounds for seed cotton, which charge covered the bagging and tie charge. This was a slight reduction from the former charge. The average number of pounds of seed cotton in a bale is not less than 1,600; at 30 cents a hundred would average $4.80 a bale. The usual price for ginning cotton over the country, where a gin is located and gins about 500 bales without competition, 60 cents per hundred for lint cotton or $3 a bale and charge $1 for bagging and ties; from 600 to 1,200 bales they charge 50 cents per hundred and $1 for bagging and ties or $3.50 per bale; from 1,200 to 2,000 or more bales, 40 cents per hundred and $1 for bagging and ties, $3. The evidence in this case shows that the customary price for ginning cotton 40 cents per hundred pounds of lint cotton and $1 for bagging and ties; that this is the price that is being charged by other gins in other towns in this section of the country. It is further shown from the evidence that there will be from 600 to 1,000 bales of cotton to gin in the vicinity of Geary this year. The defendant claims his gin cost $10,000. If so, this is an unnecessary expenditure. A gin of this character at the outside with all unloading apparatus and equipment necessary to handle 2,500 bales of cotton during the season should not cost to exceed $8,000. Since the filing of this complaint and the hearing of this cause, the defendant has informed the Commission that he will not gin cotton for anybody except himself. By this declaration, he says to the public at Geary: 'I am the only cotton buyer in the town. I will not gin cotton for any one that buys cotton from the farmer. I will not gin cotton for the farmer.' By a custom that runneth beyond the memory of man, cotton gins have been erected and gin cotton for the public for so much toll, and should all gin men pursue the policy now insisted upon by the defendant in this case, the gin men would have monopoly throughout the country and would pay the farmer whatever they saw proper for his cotton, and he would be absolutely at their mercy. This would be the most disastrous trust that could be conceived. We concede that the defendant has a right to build a gin and gin his own cotton and cannot be compelled to gin for the public, but in this case he has held himself out to the public since he began the operation of this gin as a ginner of custom cotton. By this action his gin became a public utility under section 13 of the anti-trust act, and this gin came within the jurisdiction of the Corporation Commission, and this

jurisdiction cannot be escaped by the action of the defendant in this way.  The Interstate Commerce Commission has held that a railroad could be built from one point to another point in a state and operated without coming within the jurisdiction of the Interstate Commerce Commission; but when such railroad made traffic arrangements with other roads and participated in the transportation of through freight, this road once under its jurisdiction, the Commission had authority to prescribe interstate rates and to require such road to participate therein.  For the defendant to withdraw this use from the public at this particular time would be disastrous, and if he can at all withdraw this use from the public it must be done after giving to the public a reasonable notice, and not in the middle of a ginning season.  Men who own threshing machines throughout the country could say in the middle of a threshing season that 'we will not thresh this wheat unless you sell it to us before we thresh it.'  If this was the law, farmers could be robbed out of a wheat crop or a cotton crop in one season.  After our conference with the defendant Mr. Harriss and studying him closely, we ,are almost persuaded that his sole object in the attitude he has taken is for the purpose of robbing the farmers of that section out of what they have justly and honestly made, and this Commission will never believe it is the law when a man with a little money, living in Oklahoma City, can erect gins over the country, as Mr. Harriss has done, and hold out to the communities that they are public utilities, and in the middle of the cotton season withdraw the use from the public and say: 'I have the only gin in this town.  You can sell me your cotton, or you can haul it 10, 20, or 30 miles to other gins, or can help yourself.'  This does not even smack of the ordinary elements of fair dealing and honesty.  The Commission before writing this order called up some of the leading gins and cotton men over the state to ascertain the actual custom and prices, and the prices indicated above are the maximum prices charged with the exception at Holdenville, where they charge 25 cents a hundred pounds for seed cotton, which includes bagging and ties, or average $3.75 per bale.  At Maud, south of Shawnee, they are charging 40 cents per hundred pounds for lint cotton and $1 for bagging and ties, or $3 a bale.  In this case, the evidence being somewhat uncertain as to the number of bales of cotton to be ginned at Geary this year, the Commission is of the opinion that 55 cents for 100 pounds of lint cotton and $1 for bagging and ties is a reasonable amount, or 25 cents per hundred pounds for seed cotton, including the bagging and ties, makes about the same

as 55 cents and charging $1 for bagging and ties. The bagging and ties cost the gin men from 70 to 75 cents, usually 71 to 72 cents. He has a profit of 25 cents from this source on his investment in bagging and ties. The defendant, the Harriss-Irby Cotton Company, is hereby ordered to gin cotton at the town of Geary for 55 cents per hundred pounds lint cotton and $1 for bagging and ties or 25 cents per hundred pounds for seed cotton which shall include the charge for bagging and ties. The company can charge either one or the other; it cannot charge 55 cents for lint cotton in one instance and 25 cents for seed cotton in another. This order shall take effect on and after the 28th day of October, 1911."

The motion for a new trial made by the appellant is also as follows:

"Comes now Harriss-Irby Cotton Company, defendant, and respectfully moves the Corporation Commission to vacate and set aside order No. 530 entered herein upon the 18th day of October, 1911, to become effective on the 28th day of October, 1911; and to grant the said defendant a new trial for the following reasons, which affect materially the substantial rights of the defendant: (1) Complaint No. 1,445 filed by C. D. Baldwin *et al.*, of Geary, Okla., upon which order No. 530 of the Corporation Commission is based, does not state facts sufficient to give the Corporation Commission of the State of Oklahoma jurisdiction to hear said complaint or to make said order No. 530. (2) Complaint No. 1,445, upon which order No. 530 of the Corporation Commission is based, does not state facts sufficient to constitute a cause of action or complaint in favor of plaintiffs and against the defendant, and is insufficient to sustain order No. 530. (3) Said order No. 530 of the Corporation Commission is not sustained by sufficient evidence, and is contrary to law. (4) The findings of fact made by the Corporation Commission in said order No. 530 are not sustained by the evidence and record in this case. (5) The findings of fact by the Corporation Commission in said order No. 530 show upon their face that said findings were made from telephone communications with various parties over the state unknown to defendant when said parties were not under oath, and when defendant was unable to be present and cross-examine them. (6) That said order No. 530 is in violation of the fifth amendment of the Constitution of the United States, which provides that property shall not be taken for private or public use without just compensation. (7) That said order No. 530 of the Corporation Commission is in violation of the fourteenth amend-

ment of the Constitution of the United States, which provides that no state shall deprive any person of liberty or property without due process of law, or deny any person in its jurisdiction the equal protection of the law. (8) That said order No. 530 is unreasonable and unjust. (9) That the Corporation Commission of the State of Oklahoma is without jurisdiction or authority to make said order No. 530. (10) That said Corporation Commission erred in making said order before the defendant had closed its case, and after it had requested the Corporation Commission to permit it to introduce and offer additional testimony which was material to the issue being tried. (11) That said Corporation Commission erred in refusing to give to the defendant additional time in which to introduce evidence in its behalf, after said Corporation Commission was requested to give additional time for the purpose of introducing testimony material to the defendant herein. (12) Because said Corporation Commission did not comply with section 1246, Comp. Laws 1909, in the taking and transcribing of the testimony and submission of same to the Commission before its consideration thereof, and before the order was made herein; and also because said testimony so taken was not submitted to the Commission at the time and place fixed by the Commission for the taking of same, and that said order was made before said testimony was transcribed or submitted to the Corporation Commission, and said order was made upon telephone communications, and testimony of which the defendant had no notice, and which was not transcribed or taken down in any way by said Corporation Commission."

In the certificate certifying up the evidence theretofore taken it is stated that on the 8th day of November, 1911, the case was set for taking additional evidence at the office of the Commission on the 17th day of November, 1911, at 10 o'clock a. m.; but no one appeared for the appellant, and the case was closed.

On November 20, 1911, the appellant filed a motion in this court to strike from the supplemental record "all that part which precedes the transcript of the testimony for the reasons: First. That it is merely an argument on behalf of the Corporation Commission, and that to be considered by the court should be filed as such, but that it is not a part of the transcript of the corporation commissioners' proceedings. Second. Because the recitations and statements do not purport to be findings of fact by the

Corporation Commission and do not constitute a part of the record in said case." And further, at the same time, appellant filed an additional motion to again have the cause remanded for the taking of additional evidence on the ground that no notice whatever was ever sent to the appellant or its attorneys by the Commission of the time set for the taking of evidence, and that it had no notice of said hearing until several days after said time for hearing had passed. The motion in part is as follows:

"Appellant respectfully shows that at all times previous when hearings were set before the Corporation Commission in which it was interested, it had always received from said Corporation Commission a notice of the same stating when the hearing would be had, and that it was relying upon the Corporation Commission notifying it of the date for hearing, as such had always previously been its custom. Appellant respectfully states that it has material evidence in this case which it desires to introduce before said Commission."

Section 22 of article 9 of the Constitution provides:

"In no case of appeal from the Commission, shall any new or additional evidence be introduced in the Supreme Court, but the chairman of the Commission, under the seal of the Commission, shall certify to the Supreme Court all the facts upon which the action appealed from was based, and which may be essential for the proper decision of the appeal, together with such of the evidence introduced before, or considered by the Commission as may be selected, specified and required to be certified, by any party in interest, as well as such other evidence, so introduced or considered as the Commission may deem proper to certify. The Commission shall, whenever an appeal is taken therefrom, file with the record of the case, and as a part thereof, a written statement of the reasons upon which the action appealed from was based, and such statement shall be read and considered by the Supreme Court, upon disposing of the appeal. The Supreme Court shall have jurisdiction, on such appeal, to consider and determine the reasonableness and justness of the action of the Commission appealed from; as well as any other matter arising under such appeal; provided, however, that the action of the Commission appealed from shall be regarded as *prima facie* just, reasonable, and correct; but the court may, when it deems necessary in the interest of justice, remand to the Commission any case pending on appeal, and require the same to be further inves-

tigated by the Commission, and reported upon to the court (together with a certificate of such additional evidence as may be tendered before the Commission by any party in interest), before the appeal is finally decided."

It will be seen that nothing is proper to be incorporated in the record except "all the facts upon which the action appealed from was based, and which may be essential for the proper decision of the appeal, together with such of the evidence introduced before, or considered by the Commission as may be selected, specified and required to be certified, by any party in interest, as well as such other evidence, so introduced or considered as the Commission may deem proper to certify, * * * and a written statement of the reasons upon which the action appealed from was based. * * *"

It follows that such part as is contained in the record certified up as may not be within the purview of the foregoing is improperly there, and it is hereby ordered stricken from the record, not only for the foregoing reason, but also the further reason that the statement that the orders granting the supersedeas and remanding the cause for the taking of additional evidence were made *ex parte* is neither true as to fact nor borne out by the record in this case. The record shows that the Attorney General, whose duty is made by the Constitution to represent the Corporation Commission in this court, accepted service on each of these applications, and no appearance was made either by the Corporation Commission or its counsel in this court to answer or contest said applications, but default was made. Had the Corporation Commission or its attorney thought that said order remanding for the taking of additional evidence, or superseding the order pending appeal, was improperly granted, the proper procedure would have been to file a motion in this court to modify or vacate or supplement the same, which would have been given not only respectful but careful consideration. But no such motion has been filed with this court.

Section 21, art. 9, of the Constitution, provides:

"Upon the granting of an appeal, a writ of supersedeas may be awarded by the Supreme Court, suspending the operation of

the action appealed from until the final disposition of the appeal; but, prior to the final reversal thereof by the Supreme Court, no action of the Commission prescribing or affecting the rates, charges, or classifications of traffic of any transportation or transmission company shall be delayed, or suspended in its operation, by reason of any appeal by such corporation, or by reason of any proceeding resulting from such appeal, until a suspending bond shall have first been executed and filed with, and approved by the Commission (or approved, on review, by the Supreme Court), payable to the state, and sufficient in amount and security to insure the prompt refunding, by the appealing corporation to the parties entitled thereto, of all charges which such company may collect or receive, pending the appeal, in excess of those fixed, or authorized, by the final decision of the court on appeal. The Commission, upon the execution of such bond, shall forthwith require the appealing company, under penalty of the immediate enforcement (pending the appeal and notwithstanding any supersedeas) of the order or requirement appealed from, to keep such accounts, and to make to the Commission, from time to time, such reports, verified by oath, as may, in the judgment of the Commission, suffice to show the amounts being charged or received by the company, pending the appeal, in excess of the charge allowed by the action of the Commission appealed from, together with the names and addresses of the persons to whom such overcharges will be refundible in case the charges made by the company, pending the appeal, be not sustained on such appeal; and the Commission shall also, from time to time, require such company, under like penalty, to give additional security on, or to increase the said suspending bond, whenever, in the opinion of the Commission, the same may be necessary to insure the prompt refunding of the overcharges aforesaid. Upon the final decision of such appeal, all amounts which the appealing company may have collected, pending the appeal, in excess of that authorized by such final decision, shall be promptly refunded by the company to the parties entitled thereto, in such manner and through such methods of distribution as may be prescribed by the Commission, or by law."

It is a serious question as to whether the appellant was not entitled under this section of the Constitution to the supersedeas as a matter of right; but this court, out of regard for the rights of the public, required that the gin be operated regularly on a certain day in every week at which cotton for the public should

be ginned, so as to protect the interest of the public pending the adjudication of the rights of all these parties on review in this court. If this order, which was made without the appearance of any representative on the part of the Corporation Commission, after notice, was not sufficiently comprehensive to safeguard all these interests, the proper procedure would have been by a motion to modify or vacate or supplement, and the place to file such motion is with the clerk as a pleading in this court, and not as a certificate in the record that is sent up. As to the motion to again remand for the taking of additional evidence, it was not the duty of the Corporation Commission to notify counsel for the appellant as to the date on which the cause was again set for hearing. The appellant took notice as a matter of law of such setting, and having procured at his own instance the remanding of said cause for the taking of additional evidence, and this court having required that it be done within a certain time in order that this cause might be expeditiously determined, provided the attorneys for both sides of this case would expeditiously brief the case, it was doubly the duty of the attorneys for appellant to make inquiry and exercise diligence on its part. This it has failed to do.

In *Hine v. Wadlington et al.,* 27 Okla. 285, 111 Pac. 543, it is said:

"We think this evidence may be considered as a part of this record on this hearing. If the action of the Corporation Commission in certifying up same operates as a surprise to the appellant, his remedy is, not to move to strike out this evidence, but to set up under proper verification the evidence that he was precluded from introducing by the Commission's not hearing additional evidence under the order of this court, and, if it then appears that appellant is entitled to have such evidence considered, this court, under section 22, art. 9, of the Constitution, may require the Commission to hear such evidence and certify it up to become a part of the record before us."

Whilst the Attorney General and the Corporation Commission have both had served upon them notice of this hearing for the remanding of said cause again for the taking of additional evidence, no contention has been made that the motion is insuffi-

cient on the ground that it fails to set out substantially the evidence sought to be introduced. But as this is the second application for the remanding of the case, and as the case was set for hearing for the taking of additional evidence, and the appellant failed to avail itself of that opportunity and again asks for it to be remanded, it certainly must be required to comply strictly with the proper rule, and on both grounds— that is, that the application does not come strictly within the rule, and that it had an opportunity that it did not avail itself of or exercise proper diligence—the motion to remand must be overruled.

It follows that the motion to strike out that part of the record certified up by the Corporation Commission that is not properly a part of it will be sustained, and the motion of appellant to remand for the taking of additional testimony will be denied, and this cause is ordered set for hearing at the head of the docket, with directions that all parties proceed instanter to brief the same.

All the Justices concur.