McCALEB, Justice.
Louisiana Gas Service Company instituted this proceeding for the annulment of Order No. 10,091 of the Louisiana Public Service Commission which granted The Polaris Corporation the exclusive right to furnish permanent natural gas service to Willowdale Country Club Subdivision in St. Charles Parish. Polaris intervened in the case praying for affirmation of the Order. After a hearing the district judge rejected plaintiff’s demands and affirmed *539 in all respects the Order of the Public Service Commission. Wherefore this appeal.
The litigation arises out of a dispute between Louisiana Gas and Polaris to serve the Willowdale Country Club Subdivision in the Boutte-Luling area of St. Charles Parish. Both of these utilities hold franchises granted by the Police Jury of St. Charles Parish and are engaged in the natural gas distribution business. At the time of the construction of the Willow-dale residential subdivision, its developers, believing that satisfactory contractual arrangements would be made with Polaris to furnish residential gas for the houses to be built in the subdivision, installed a pipeline running 6,980 feet North to Highway 90 and approximately 3,500 feet West along the highway to a point within inches of a pipeline of Polaris located at that point. In April of 1967 negotiations were entered into between the subdivision developers and Polaris concerning the sale of the pipeline to Polaris so that it could be connected with the latter’s system and furnish gas service to the homes in the
subdivision. However, differences arose between the parties respecting the terms of the sale, Polaris insisting upon a refundable contract extending over five years (later changed to ten years) and a clause regarding payment for the maintenance of the system. The developers, however, desired a period of fifteen years for the refundable contract and would not agree to be responsible for payment of costs of repairs and for maintenance. The parties were unable to resolve their differences and, as the developers of Willowdale had committed themselves to render gas service to the purchasers of lots in the subdivision, one of the officers of Willowdale contacted Louisiana Gas seeking an agreement with the latter for the purchase of the pipeline and the rendition of gas service to the subdivision.
On May 8, 1968, after discussions between Willowdale developers and Polaris had come to an impasse, Louisiana Gas agreed to purchase the pipeline for $20,000 cash and a written sale was confected on May 16, 1968. Three days before, however, on May 13, 1968, Polaris filed a complaint[1] *541 with the Public Service Commission alleging that the actions of Louisiana Gas amounted to an encroachment on the service area of Polaris and are in violation of the Commission’s General Order of January 18, 1954 providing that: “ * * * service shall be rendered by that company which can do so with the shortest, or least expensive extension.” The Commission, thereafter, in compliance with the demand of Polaris, issued an order on June 7, 1968 prohibiting Louisiana Gas from servicing the Willowdale Subdivision and assigned the matter for hearing.
Following a hearing on the merits, the Commission issued its Order No. 10,091 that permanent natural gas service to the Willowdale Country Club Subdivision “ * * * shall be rendered exclusively by The Polaris Corporation * * * ” giving as its reason for this action the Polaris has facilities adjacent to the subdivision and that to allow Louisiana Gas to service the area would be violative of its General Order issued in 1954 that “ * * * no extension of mains shall be made by a water or gas public utility that will duplicate the service of another like utility serving the same commodity, nor shall extensions be made to serve customers that could be served by a public utility already in existence in an economic and justifiable manner.”
After this Order was issued, the Commission realized that Polaris could not supply gas service to the subdivision because the pipeline leading thereto was owned by Louisiana Gas. It, therefore, perforce issued Order No. 10,115, dated October 21, 1968, in which Louisiana Gas was ordered to service the Willowdale area without prejudice to the rights of the parties 'during the pendency of the litigation. . .
It is .the contention of plaintiff that Order No. 10,091 of the Commission is unsupported by the facts and, hence, it is unreasonable, unwarranted and not sustained by the Commission’s General Order of 1954 upon which the Commissioners relied for their conclusion. Pointing to uncontradicted evidence in the record, plaintiff asserts that, when it purchased the distribution system from the developers of Willow-dale, there was no other utility serving the area and Polaris owned no facilities to furnish such service. Therefore, it is argued Louisiana Gas did not duplicate the natural gas service or any facilities of Polaris, as stated in the Commission’s Order.. And it is further contended that, in view of the fact that plaintiff owns the Willowdale system, the action of the Commission amounts to an unauthorized taking of its property and property rights contrary to Article I, Section 2 and Article *543 IV, Section 15 of the Louisiana Constitution.[2]
The district judge, in upholding the Commission, expressed the view that, although the Order complained of causes injury to the property rights of plaintiff, the “ * * overriding public interest must take precedence.”
We do not find it essential to discuss whether there is merit in the constitutional or statutory issues raised by plaintiff — for a reading of the record makes it manifest that there are no facts on which the rulings of the Commission and the district judge can stand. There was no duplication of existing facilities by plaintiff for, although the Willowdale pipeline had been run to a location within inches of a Polaris service line, service was never rendered to Willowdale and the line has never been in operation at any time. Indeed, as the facts clearly reveal, the line was only installed by the developers of Willowdale along Highway 90 towards the Polaris facilities under the mistaken belief that Polaris would agree to buy their pipeline and service the Willowdale area at a reasonable price and not burdened with conditions which would effect a reduction in the purchase price. However, when negotiations were fruitless[3] and the pipeline was purchased by *545 Louisiana Gas, it became impractical, in fact impossible, for Polaris to service this area without expropriating the property of Louisiana Gas or constructing a pipeline of its own (which would unquestionably be violative of the Commission’s 1954 General Order prohibiting duplication of service).
Nor does the record justify the conclusion of the district court that the Commission’s Order must be upheld because of an “overriding public interest.” Actually, the facts show that the public interest will best be served by the dismissal of the Polaris complaint. It was established by uncontradicted evidence that the rates of Louisiana Gas are lower than those of Polaris and, with its acquisition of the system of Willowdale, Louisiana Gas can serve the area more economically. Under the provisions of the General Order of 1954 no extension shall be made to serve customers that “ * * * could be served by a public utility already in existence in an economic and justifiable manner.”
It is the settled jurisprudence that where the findings and conclusions of the Commission are not supported by the evidence, the order is unreasonable, arbitrary and unwarranted, and it is the duty of the court to vacate such an order. Texas & New Orleans Railroad Company v. Louisiana Public Service Commission, 235 La. 973, 106 So.2d 438; Herrin Transportation Company v. Louisiana Public Service Commission, 241 La. 174, 127 So.2d 541; and other cases.
For the reasons assigned, the judgment of the district court, affirming the Order of the Commission, is reversed and set aside and Order No. 10,091 of the Public Service Commission is declared invalid and, accordingly, annulled.
SANDERS, J., did not participate.

. This complaint stated that Polaris had previously entered into a verbal agreement with the President of Willowdale Country Club Subdivision, John Weinnig, Jr., concerning the reimbursement of costs incurred by Willowdale in the construction of a natural gas system to serve this area; that this gas system had been built to specifications discussed with and approved by Polaris’ engineers and the engineers of Willowdale; that Polaris had accepted meter deposits, installed service connections for prospective customers, and made necessary adjustments to its system to provide sendee to this subdivision, as agreed; and a cease and desist order is sought to prevent Louisiana Gas Sendee Company from negotiating or acquiring the Willowdale system in order that Louisiana Gas will not encroach on the service area of Polaris.

. Plaintiff also cites and relies upon the provisions of R.S. 45 :315 (which is part of the gas pipeline Act), which denies, inter alia, the Public Service Commission authority to limit or restrict the franchise rights of public utilities engaged in the business of distributing gas.

. The reasons for the discontinuance of the negotiations of the developers of Willowdale and Polaris are well stated in a letter from Willowdale Country Club addressed to Public Service Commission on May 16, 1968, the assertions in which are borne out by the uncontradicted evidence in the case, viz.:
“Gentlemen:
“We are in receipt of a copy of a letter addressed to your Commission by The Polax'is Corporation, dated May 13, 1968. That letter took up the subject of natural gas service to the Willowdale Country Club Subdivision in St. Charles Parish, and complained of our negotiating with another gas company for the providing of natural gas to our subdivision. We feel obliged to inform the Commission of facts which were not contained in that letter which
we believe will elax'ify this matter.
“Contrary to the assertions in that letter, we have not had and do not now have any contract with The Polaris Corporation. Indeed, it is this very subject of contract that has caused us such great difficulty and delay in getting a supply of natural gas. We tried over a period of a little more than one year to reach a contract with The Polaris Corporation relative to supplying our subdivision with natural gas. It would serve no useful purpose here to detail and document the many instances when wo thought we had reached a tentative agreement with The Polaris Corporation .only to have it withdraw from the agreement at a later time and/or introduce more onerous and unacceptable conditions.
“Finally, because of the failure of The Polaris Corporation to enter into an agreement with us, we were compelled to seek another means of obtaining natural gas for our subdivision. We sought out Louisiana Gas Service Company and conferred with that Company in an effort to interest it in pxxrchasing the *545 pipe which we had installed in our subdivision and to furnish us with natural gas. On May 8, 1968, we entered into an agreement with Louisiana Gas Service Company to sell that Company the pipe which we had already installed, and we have now executed an act of sale by which we have sold to Louisiana Gas Service Company all of the pipe installed by us. * * * ”