342 So.2d 609 (1977)
The BATON ROUGE WATER WORKS COMPANY, Plaintiff-Appellee,
v.
LOUISIANA PUBLIC SERVICE COMISSION, Defendant-Appellant.
No. 58307.
Supreme Court of Louisiana.
January 24, 1977.
Rehearing Denied March 2, 1977.[*]
*610 Marshall B. Brinkley, Gen. Counsel, Louisiana Public Service Commission, Baton Rouge, for defendant-appellant.
F. W. Middleton, Jr., Taylor, Porter, Brooks & Phillips, Baton Rouge, for plaintiff-appellee.
TATE, Justice.
The plaintiff ("Baton Rouge Water") sought judicial review in district court of the defendant Commission's failure to authorize higher rates so as to produce a 13% return on equity, as applied for, instead of the 10.5% allowed by the commission. The district court found the Commission's allowance of only 10.5% profit arbitrary, as contrary to the evidence, because allegedly the uncontradicted testimony of Baton Rouge Water's expert showed the utility to be entitled to the higher rate. The court then modified the Commission order so as to allow the higher rate of return on equity.
The Commission appeals to this court as authorized by Art. 4, Section 21, La.Const. of 1974. It contends that the trial court erroneously placed the burden on the Commission of proving the petitioner's demand to be unreasonable and that it failed to give proper weight to the Commission's expertise in arriving at the proper rate of return on the investment in a closely-held local utility which obtains its equity capital by retaining earnings instead of paying full dividends.
The central issue of this appeal concerns to what extent, if any, the Commission may disregard uncontradicted expert opinion testimony before it in determining the rate of return on equity to be allowed for rate making purposes.

Facts
Baton Rouge Water applied to the defendant Commission for authority to charge increased rates so as to produce additional gross revenues of $1,341,100, which included a 13% return on equity. The additional revenues were necessary to permit Baton Rouge Water sufficient funds to meet increased costs and to expand operations, including the increased cost of borrowing funds, as well as allegedly to allow it a just and reasonable return on the applicant's investment.
After hearing, the Commission entered an order allowing increased revenues of $874,250, thereby allowing a return on equity of only 10.5%. Baton Rouge Water Works appealed to the district court, alleging that its uncontradicted expert testimony (based on a study of eight publicly quoted water company stocks) showed that 13% return of equity was necessary in terms of raising and supporting equity capital.[1] This expert witness testified that the eight water companies used by him were comparables equivalent to Baton Rouge Water.[2]
*611 The Commission introduced no opposing expert evidence. Nevertheless, in an unarticulated order which concluded that the requested increase in revenues was excessive, it authorized increased rates sufficient to produce additional revenues of $874,250 instead of the $1,341,000 prayed for (i. e., producing a return on equity of 10.5% instead of the 13% sought).
In reversing the Commission and in allowing the full increased revenues sought, the district court felt that the Commission was arbitrary in not accepting the uncontradicted testimony of the applicant's expert.
The Expert Opinion Testimony
The Commission concedes that its findings or conclusions may be set aside on judicial review as arbitrary, if not supported by the evidence. Louisiana Gas Service Co. v. Louisiana Public Service Commission, 256 La. 536, 237 So.2d 369 (1970); Southern Pacific Transportation Co. v. Louisiana Public Service Commission, 254 La. 23, 222 So.2d 499 (1969). However, the Commission points out, the evidence of the expert in the present record indicates on its face that Baton Rouge Water is entitled to a lesser rate of return than that to which he testified.
The general rule is that a regulatory body may use its own judgment in evaluating evidence as to a matter within its expertise; it is not bound by even uncontradicted testimony of experts which amount to mere opinions on their part. 2 Davis, Administrative Law Treatise, Section 14.13 (1958). Here, as the Commission points out, the opinion of Baton Rouge Water's expert is based upon his necessarily subjective evaluation of the implications of certain facts. We are cited to no authority which requires the Commission to accept without deviation the expert's opinion of the proper rate of return on equity to be ordered by itat least where the factual data on which this opinion is based is reasonably susceptible to a different interpretation by the Commission, within its constitutional authority to make such fact and rate determinations based upon its own reasonable interpretation of the facts upon which the expert bases his opinion, as well as of the record as a whole.
The Commission suggests that the testimony of Baton Rouge Water's expert that the applicant is entitled to a 13% return on equity indicates on its face reasons why the Commission need not accept it as conclusive:
In the first place, the 13% rate proposed is founded on an average of the earningsprice ratios of eight utilities which, without supporting testimony, the expert assumed were comparable. See footnote 2. These publicly-held companies might be, but need not necessarily be (and are not shown to be), comparables insofar as the proper rate of return on equity for a closely-held corporation such as is Baton Rouge Water.[3]
Further, the expert based his opinion of a proper rate of return on equity on the earnings-price ratio of these possibly dissimilar utilities. This ratio is based on the earnings per share of the eight selected utilities based on the market value of their stock on a given day. In the absence of any shown relationship of the market value of the shares to the book value of the utility's capital, for rate-making purposes the rate of earnings so reflected are not indicative of the rate of return on equity of these utilities. See Southern Bell Tel. & Tel. Co. v. Louisiana Public Service Commission, 239 La. 175, 118 So.2d 372, 386-87 (1960).[4]
*612 Finally, the Commission contends that the testimony of the expert on its face shows that he utilized a "fair value" concept of equity, not the "original cost" rule historically followed by Louisiana. Cf., Southern Bell Tel. & Tel. Co. v. Louisiana Public Service Commission, 239 La. 175, 118 So.2d 372, 386 (1970). Thus, the Commission suggests, it could disregard opinion testimony on a formula not accepted in Louisiana. Id.
Conclusion
The chief difficulty with the Commission's argument is that it is based upon contentions made in brief rather than upon express findings of the Commission to such effect.
For purposes of judicial review, and in order to assure that the Commission has acted in accordance with law, it is usually preferable that, in a contested case involving complex issues, the administrative agency makes findings as to the central disputed issues and explain the reasons for its determination. Cf.: Louisiana Power and Light Co. v. Louisiana Public Service Commission, 324 So.2d 430 (La.1975); White v. Louisiana Public Service Commission, 259 La. 363, 250 So.2d 368, 373 (1971); Hunter v. Hussey, 90 So.2d 429 (La.App.1st Cir.1956), certiorari granted. "It is enough if the Commission proffers findings and conclusions sufficiently detailed to permit reasoned evaluation of the purposes and implications of its order." In re Permian Basin Area Rate Cases, 390 U.S. 747, 814, 88 S.Ct. 1344, 1384, 20 L.Ed.2d 312 (1968). See also 2 Davis, Administrative Law Treatise, Chapter 16 (1958); 2 Cooper, State Administrative Law 465-78 (1965); Schwartz, Administrative Law, Sections 140, 141 (1976).
We have not before now, however, held that such formal findings and reasons are sacrosanct to the validity of an administrative determination, unless required by statute. Nevertheless, Louisiana courts have on occasion remanded for this purpose, when unable to review the agency determination in the absence thereof. See Louisiana decisions cited in the preceding paragraph.
The general principle governing judicial review is that, where some evidence as reasonably interpreted supports the regulatory body's determination, the orders of the Commission and other regulatory bodies exercising discretionary authority are accorded great weight and will not be overturned by the courts in the absence of a clear showing that the administrative action is arbitrary and capricious. Truck Service, Inc. v. Louisiana Public Service Commission, 263 La. 588, 268 So.2d 666 (1972) and decisions therein cited.
In the present instance, the precise issue before us for review is relatively simple: Was the administrative agency arbitrary in not accepting the uncontradicted testimony of the utility's expert that it was entitled to receive a 13% return on equity, but in instead allowing the utility only 10.5% (but almost two-thirds of the additional revenues sought)?
After reading the brief record, we are unable so to hold.
The expert's opinion testimony is that Baton Rouge Water is entitled to a 13% return on equity. This opinion is based upon the average earnings-price ratio of *613 eight utilities on a given day, at least two of whom have earnings-ratios below the 10.5% return on equity ultimately allowed by the Commission. See footnote 2 above.
The earnings-price ratios of other utilities, while relevant, are only one factor along with others, in the Commission's determination of a rate of return, and one which must be used with circumspection due to the difficulty if not impossibility of true comparability of different utilities. See footnote 4 above and surrounding text.
Further, there can be no standard rate of return applicable to all utilities under all circumstances. The question of what constitutes a reasonable rate of return depends upon the peculiar situation of each utility, which is largely reflected in its own costs of capital. United Gas Pipe Line Co. v. La. Public Service Commission, 241 La. 687, 130 So.2d 652 (1961); Southern Bell Tel. & Tel. Co. v. La. Public Service Commission, 232 La. 446, 94 So.2d 431, 436 (1957). The present closely-held self-capitalized company is not shown to be truly comparable with the publicly-held companies used by the expert as a basis for his opinion. See LaSalle Telephone Co. v. Louisiana Public Service Commission, 245 La. 99, 157 So.2d 455 (1963).
It would have been preferable if the Commission order, in finding that the requested increase was excessive, had specifically stated (for reasons such as are noted) why the Commission rejected or modified the 13% return on equity which the defendant's expert opinion stated was necessary. If the Commission had done so, this court could not, within the limitations of judicial review, hold that the Commission acted arbitrarily in so rejecting and modifying the return on equity which the expert believed to be necessary.
Under these present circumstances, where the findings and reason for the Commission's action are necessarily implied by the record, and where our study of the brief administrative record shows that on the simple issue presented for judicial review' sufficient evidence supports the administrative determination, little purpose would be served by a remand for such formality. As stated under somewhat similar circumstances by the Florida Supreme Court, "it would be little more than a gesture to reverse the judgment and direct that the administrator be required to specify what so obviously was the reason for his action * * *." Little Man's Club v. Schott, 60 So.2d 624 (Fla.1952). See 2 Davis, Administrative Law Treatise, Sections 16.07, 16.14 (1958).
The courts may not on judicial review substitute their judgment for the Commission's and overturn an administrative determination not shown to be clearly arbitrary as contrary to law or to the evidence heard by the regulatory body. Truck Service, Inc. v. Louisiana Public Service Commission, 263 La. 588, 268 So.2d 666 (1972) and decisions therein cited. No such arbitrariness being here demonstrated, the district court was in error in modifying the Commission's determination.
Accordingly, we reverse the judgment of the district court which modified the Commission order; and we dismiss this suit, at the cost of the plaintiff-appellee.
REVERSED AND DISMISSED.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting).
On May 21, 1974 Baton Rouge Water Works Company applied to the Louisiana Public Service Commission for approval of an increase and adjustment of rates and charges for water utilities service sold to the City of Baton Rouge and the surrounding area. The application requested authority to increase the Company's rates to provide additional gross revenues of $1,341,100, based upon financial results of the twelve month period ending March 31,1974.
After notice, a hearing was had on July 15, 1974, at which the Company offered testimony and filed evidence and exhibits. No opposition or objection to the Company's application was made at the hearing.
The following is a summary of the expert testimony presented by the Company at the *614 hearing. The public utilities of this country today face by far the worst financing problem in their history. The interest rates on the bonds they sell have more than doubled over the last ten years and the cost of raising and supporting equity capital in terms of required earnings and dividends has gone up even more. This is due to the present high rate of inflation. It is a long term historical fact that inflation is something that must be paid for in the interest rate and in the cost of capital in general.
Ten years ago Baton Rouge Water could have sold long term bonds at a cost of 5% or less. Today they would do well to do the same thing at a cost of 10%, and if inflation is not abated this cost could go higher. High grade corporate bonds in Britain, where inflation is worse than here, now sell to yield about 16frac12;
The high interest rates that utilities now have to pay is probably well understood and recognized by regulators. What has not yet been adequately recognized by them has been the drastic increase in the cost of equity capital. Bonds and stocks are of course interchangeable forms of investment and what happens to the yield on bonds directly affects what investors expect from stocks. It couldn't be any other way.
In the years 1963 to 1965 when utility stocks were in favor with investors, and not in disfavor as they are now, most electric stocks sold in the range of 18 to 22 times earnings. They now mostly sell in the range of 6 to 8 times earnings. Most of these stocks are selling way below book value, which means that new stock can only be sold at the cost of seriously diluting the position of the old stockholders. This in turn can only lead somewhere along the line to a cut in dividends per share. From the Consolidated Edison experience, it means being cut off from all types of financing, bond and stock alike.
Water company stocks, while not so well publicized because there are so few of them, fared nearly as badly as electric stocks. A study of the behavior of 8 water company stocks, which is about all that are publicly quoted, is presented. This study shows that in the years 1963 to 1965 it required only about $6.25 of reported earnings to support $100 of market value of these stocks on average. As of May 31, 1974, it required over $13 of earnings to do the same job. That indicates more than a doubling in the cost, in terms of earnings, of raising and supporting equity capital by these 8 water companies. From that point the situation has deteriorated further. Taking into account the cost of selling new shares, and depression in the market resulting therefrom, it was concluded that these water companies would require a 15% return on equity capital to enable them to realize from the new shares as much as the book value of the old shares.
A 15% return on book equity is recommended for Baton Rouge Water. This represents only a 9.1% return on this equity revalued in dollars of present purchasing power. By past standards 15% on book equity looks high, but it doesn't any more-not in a period when the banks are charging their most credit worthy borrowers 12% for short term money, often demanding compensating balances besides which increases the effective rate. A 15% return on equity is not over 5% more than the likely present cost of bond money. Back in the period when bonds yielded 5% or less, a 10% return on equity to a utility like Baton Rouge Water was considered reasonable and most utilities were then earning more than this. The testimony indicates that the cost of equity capital has gone up at least as much as the cost of debt capital.
Baton Rouge Water Works has not sold new stock to the public, at least for a long time. It has added the required equity capital by retaining most of its stockholders' earnings. This is not a good reason why it should be discriminated against in the rate of return allowed. If this were the case, it would be in the stockholders' interest for the company to pay out all its earnings, and raise new equity capital by selling stock.
The matter was taken under advisement and on November 22, 1974 the Commission issued its order finding "that the requested *615 increase in revenues was excessive." No other findings or reasons were assigned. Accordingly, revised schedules of rates were ordered filed to provide additional gross operating revenues of not more than $874,250 annually in lieu of the $1,341,000 requested by the Company.
Pursuant to Article VI, Section 5, of the Constitution of 1921 and Article IV, Section 21(E), of the Constitution of 1974 the Company appealed the Commission's order to the Nineteenth Judicial District Court.
On first consideration the district court affirmed; however, on the Company's application a new trial was granted limited to reargument. On reconsideration the trial judge found that "the record is barren of any evidence which would suggest that the 13% return on equity requested by petitioner is unreasonable." The trial judge was of the opinion that in the absence of such evidence, the court has no alternative but to conclude that the Commission's order was arbitrary and unreasonable. Accordingly, judgment was rendered, setting aside the Commissioner's order and granting the necessary rate increase to afford gross revenue annually of $1,310,747 as requested by the Company.
From the district court judgment the Commission appealed to this Court, specifying as grounds for reversal the allegations that the judge of the district court 1) shifted the burden of proof, 2) failed to give weight to the Commission's expertise, and, alternatively, 3) should have remanded the case to the Commission.
These contentions are argued together and the principles involved are interrelated to such an extent that they will be treated together.
The finding of the trial judge that there was no evidence to refute the proof of the Company does not shift the burden of proof to the Commission to prove that the requested return on equity is unreasonable. The burden of proving reasonableness rests upon the applicant. However, when the applicant does establish the reasonableness of the requested rates, the Commission may not deny the request unless there is an evidentiary basis for its action. LaSalle Telephone Company v. Louisiana Public Service Commission, 245 La. 99, 157 So.2d 455 (1963); Missouri Pacific Railroad Company v. Louisiana Public Service Commission, 238 La. 243, 115 So.2d 337 (1959); Gulf States Utilities Co. v. Louisiana Public Service Commission, 222 La. 132, 62 So.2d 250 (1952).
The absence of any opposition to the Company's application plus the fact that there is no evidence to contradict their exhibits or to refute the credible testimony of their experts is not of the Company's making. In the absence of such countervailing or rebuttal evidence the Company has discharged its burden of proof if it makes a showing of reasonableness. While this situation does not necessarily shift the burden to the Commission to prove that the rates requested are unreasonable, in the absence of evidence to contradict the showing of reasonableness the Commission may not reject the proof thereby established.
Some evidence is required to support the order of the Commission, whether it be produced by the Commission, by opponents, or, as may happen at times, by self-defeating evidence of the applicant. Although we cannot say who must bring this countervailing evidence to the record, it is sufficient to say it must be there. In any case, the presumed expertise of the Commission cannot alone serve to refute facts amply established by proof in the record.
In Mississippi River Fuel Corporation v. Federal Power Commission, 82 U.S.App. D.C. 208, 163 F.2d 433 (1947) the court rejected a commission contention which would have resulted in perfunctory judicial review, stating:
". . . The Commission says that a reviewing court is limited to a consideration of the `end result', the rate, or price, prescribed by the final rate order for the commodity or service.

. . . . .
". . .The Commission seems to contend that the court must examine the rate per se, as an abstraction, or as a *616 naked economic fact, divorced from the elements of which it is composed and regardless of its effects; and if it appears fair and reasonable upon such examination, it must stand. Such contention is without merit, either upon reason or upon authority and moreover is impossible of practice.

. . . . .
"The Commission says, `The Court, unlike the Commission, is not an expert body * * *.' Be that as it may, the Commission, even though expert, is forbidden to be arbitrary. And the courts are directed to prevent it from being so. The Commission cannot, and we do not understand it to claim that it can, shield arbitrariness by averments of its own infallibility, by technical expressions, or by failure to state adequate reasons for its conclusions. . . ."

. . . . .
Pertinent principles are also stated by this Court.
"It is the settled jurisprudence that where the findings and conclusions of the Commission are not supported by the evidence, the order is unreasonable, arbitrary and unwarranted, and it is the duty of the court to vacate such an order.. . . "Louisiana Gas Service Company v. Louisiana Public Service Commission, 256 La. 536, 237 So.2d 369 (1970).
It is essential to the exercise of this Court's appellate jurisdiction, La.Const. art. IV, § 21(E) (1974), that the basis for the Commission order be established by the record. For it is not only the right but the duty of this Court to determine whether the order was justified by the facts. Railway Express Agency v. Louisiana Public Service Commission, 243 La. 518, 145 So.2d 18 (1962).
Here there is no evidence to contradict what I consider to be a prima facie showing by the Company that its proposal was just and reasonable.
Remand, which the Commission seeks, should only be permitted in those instances where the party seeking that result has made a reasonable effort to support its position with proof at the trial. In the case at hand the Commission made no effort whatsoever in this respect. The delays already involved in this case and the lack of any indication in this record that the Commission could or would refute the Company's position by proof do not warrant a remand in the interest of justice. Harris-Irby Cotton Co. v. State, 31 Okl. 367, 121 P. 642 (1912).
I would affirm the judgment of the district court.
NOTES
[*] Summers and Dennis, JJ., were both of the opinion that a rehearing should be granted.
[1] Actually, this expert's opinion was that a 15% return on equity was necessary. However, Baton Rouge Water only seeks 13%.
[2] Actually, the expert testified: "While the Baton Rouge Water Works Company has no common stock quoted on the public markets, it seems reasonable to assume that the cost to it of raising and supporting equity capital would move in line with that of other utilities in the same line of business."

We also note that, in the most recent year, two of the eight "comparables" relied upon by him had an earnings-price ratio (alleged by the expert to be equivalent to a return on equity) less than the 10.5% return on equity allowed Baton Rouge Water by the Commission: Indianapolis Water, 10.15%; north Haven Water, 9.28%. Two others had an earnings-price ratio less than the 13% return on equity sought by Baton Rouge Water and allowed by the trial court: Hackensack Water, 12.46%; S. Cal. Water, 12.45%. (The "earnings-price ratio" was derived by the expert by dividing the earnings per share by the mean of the high and low market quotes for the particular stock on May 31, 1974.)
[3] For instance, unlike the "comparables", Baton Rouge Water finances its expansion from surplus earned for its investors rather than by diluting their capital ownership by offering stock to the public. This court has recognized that this may be a valid distinction for differences in rate treatment. LaSalle Telephone Co. v. Louisiana Public Service Commission, 245 La. 99, 157 So.2d 455 (1963). Cf. also Southern Bell Tel. & Tel. Co. v. Louisiana Public Service Commission, 239 La. 175, 118 So.2d 372, 385 (1960).
[4] We have stated that the earnings-price ratio "serves as a reasonably reliable guide in fixing the cost of equity capital when it is used with the exercise of an informed judgment based not only on the statistical data but also on the other relevant factors which cannot be measured precisely." United Gas Pipe Line Co. v. Louisiana Public Service Commission, 241 La. 687, 130 So.2d 652, 660 (1961). (Italics supplied) We also noted that for comparable purposes the earning studies of other companies "must be used with circumspection. It is difficult, if not impossible, to identify other business undertakings that are truly comparable." Id. at 130 So.2d 660-61. See also: In computing the rate of return to stockholders, "The procedure used here is that of ascertaining the appropriate rate from a study of earnings-price ratios, which rate is usually adjusted somewhat on the basis of the informed judgment of the Commission." Comment, 22 La.L.Rev. 257, 261 (1961). In the present case, for example, the Commission cites market-to-book ratios from certain authoritative publications indicating that in 1974 the market prices of seven of the eight utilities was from .411 to .800 of their actual book value, which had the effect of reducing the actual rate of return on equity for these utilities.